DOWNEY, Judge.
Appellant, charged with first degree murder and robbery, changed his arraignment plea of not guilty to nolo contendere and reserved the right to appeal the denial of his motion to suppress his confession.
At his police station interrogation appellant was read his constitutional rights from a “Miranda card.” When asked if he understood his rights he did not respond. He was directed to sign the Miranda card without an explanation of the effect thereof, and he did so. Appellant then asked his interrogator whether somebody could be charged with murder if someone was ac-cidently killed during a robbery. Another officer was brought in to try to answer the question. Thereupon appellant made an oral confession. At the conclusion thereof another officer was called in to make a recorded confession. When appellant expressed a desire to have an attorney the recording machine was turned off. Later, the officer testified, appellant agreed to proceed with the statement without the benefit of counsel.
The only evidence adduced on motion to suppress was that of two police officers who conducted the interrogation. Officer Ings obtained the first oral confession. He testified that he used the “family approach” on appellant.[1]
*256 It is our conclusion that the evidence presented on the motion to suppress failed to show appellant voluntarily and knowingly waived his right to counsel. There is no showing that appellant understood the rights read to him or that he understood the significance of signing the Miranda card. He inquired about the significance of an accidental killing during a robbery. Immediately after orally confessing, appellant requested a lawyer when the police advised him they were going to record his confession. Thereafter the police softened him up with a wily approach involving his family.[2] Finally the trial court suppressed the second recorded confession.
In State v. Craig, Fla.1970, 237 So.2d 737, the Supreme Court stated:
“A verbal acknowledgment of understanding and willingness to talk, followed by conduct which is consistent only with a waiver of his right to have a lawyer present, by one who has been advised of his rights, constitutes an effective waiver of his right to counsel at that stage of the proceeding.”
Here the appellant gave no “verbal acknowledgment of understanding.” The police gave him no explanation as to the effect of his signing the Miranda card. The foregoing factors, set in a background of the friendly family approach to lull him into a false sense of security, demonstrate that the appellant did not make the statement voluntarily.
It is our view that the totality of the circumstances presented without contradiction or conflict demonstrates a failure of the state to show by a preponderance of the evidence that the confession was freely and voluntarily given. Thus, the motion to suppress should have been granted.
Accordingly, the judgment and sentence appealed from is reversed, and the cause is remanded for further proceedings.
OWEN, C. J., and CROSS, J., concur.

. “Q. Okay. Now, when Lt. Paden gave you your instructions in this regard as an interrogation, did you make up your mind about using a certain approach to interrogate the Defendant?
A. Yes, sir.
Q. Now I take it then, that there are different approaches that you have used to interrogate defendants?
A. Yes.
Q. Would you tell us what approach it was that you decided to take in interrogating this Defendant?
A. We decided that I would take the family approach, him being away from his wife and children.
Q. Well, what is the purpose of that approach ?
*256 A. To get a person to weaken so you will be able to talk to liim a little better.
Q. And, what is that you are asking him, what aspects are you getting at to weaken liim?
A. Not to be away from his family if possible, sir.
Q. I am not sure I understand. Are you implying that part of this approach, you indicate to him, show you that by cooperating, he will be away for less time?
A. Yes sir.
Q. Then, as part of your interrogation approach, it was your purpose to indicate to him that if he was cooperative he would spend less time away from his family than if he was not cooperative?
A. Yes.
Q. How did you go about telling him that?
A. I asked him how long he had been away and how old were his children; and he advised me that he had a nice family. And, I told him it’s hard to come up without a father and for someone else to raise his children.
Q. How dill you indicate to him he would be away less time than if he remained uncooperative, did you say it in. so many words ?
A. No, sir, just in general.
Q. You just generally alluded to it?
A. Yes, sir.”

. Such a course of conduct contravenes the following rule set forth in Bram v. United States, 108 U.S. 532, 542-543, 18 S.Ct. 183, 187, 42 L.Ed. 568.
“But a confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * * A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the iirisoner, and therefore excludes the declaration if any degree of influence has been exerted.”