410 So.2d 164 (1981)
Wallace Jerome PORTER, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-822.
District Court of Appeal of Florida, Third District.
November 17, 1981.
On Rehearing February 25, 1982.
Bennett H. Brummer, Public Defender, and David Hertzig, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, NESBITT and FERGUSON, JJ.
FERGUSON, Judge.
After a jury trial, appellant, Wallace Jerome Porter, was adjudicated guilty of first-degree murder and kidnapping and sentenced to two consecutive terms of life imprisonment. Porter appeals claiming error as to four points. We reverse.
Porter was brought to the Public Safety Department building on June 6, 1977 by Detective Derringer for questioning with respect to the death of Charley Tyrone Haggins. Porter was not given his Miranda rights. He testified that he was beaten during this interview.
On September 18, 1977, Detectives Gergen and Derringer stopped Porter while he was driving his automobile and asked him *165 for his driver's license. When Porter failed to produce his license, he was arrested, taken to the Public Safety Department building and questioned by Gergen. Porter testified that he was told to give a statement or he would be arrested on the charge and that he was instructed how to answer questions that would be asked him in the presence of a stenographer. Porter was advised of his rights. Porter also testified that during this interview of nearly five to six hours, he was beaten, punched in the stomach, hit in the head with telephone books, struck in the face and chest by Gergen's elbow, and that the detectives pulled down his undershorts and shot rubber bands at his penis. He further testified that a broom handle was broken over his head, a gun pointed to his forehead, a burning substance sprayed in his face as he stood handcuffed in a corner with his undershorts covering his face. Porter was released from police custody "around 11:00 P.M." and was seen at Hialeah Hospital one minute after midnight. This testimony of physical abuse was supported by evidence as to the physical condition of Porter when he returned home and by medical records from Hialeah and Jackson Memorial Hospitals where Porter subsequently went for treatment. The physician who examined Porter on the night of September 18th was called by the state as a rebuttal witness. He agreed that defendant's injuries to the face and abdomen were consistent with a recent beating.
On November 5, 1977, Detective Gergen obtained an arrest warrant and again arrested Porter, taking him to a homicide office where he was held for nearly nine hours. Porter testified that he was handcuffed, slapped, had the barrel of a pistol pushed into his nostril, and was further physically abused by Gergen who pulled hairs out of his moustache and chin over a two-hour period. He testified also that he was given his Miranda rights, but signed the waiver form to avoid further beatings. On the basis of additional statements made at that time, Porter was jailed on murder charges.
Four days later, Porter first saw his attorney, Robert Gross, who advised him not to talk to police without his presence and wrote Porter a note explaining that Porter did not wish to be questioned or to submit to a polygraph test without the presence of Gross. Later that day detective Gergen took Porter from the county jail for the purpose of having him submit to a polygraph examination.[1] Porter handed him the note from Gross. Gergen read the note. Porter testified that Gergen told him that Gross would not represent him at the trial and would not let him call the attorney and that he signed a second waiver form because he was afraid that he would be attacked again. After the polygraph exam, Porter was taken back to the homicide office by Gergen, signed another waiver form, and gave additional statements to Gergen.
Detective Gergen testified that he did not physically abuse the defendant. There was also testimony by the reporter who recorded the statements from Porter on June 6, 1977, September 18, 1977 and November 10, 1977 that she did not remember anything out of the ordinary insofar as Porter's physical condition and recalled no comments made about his condition. The polygraph examiner testified that there was nothing about Porter's appearance that would lead him to believe that Porter had been physically abused.
The five statements given by Porter as to events immediately preceeding the victim's death and his role in the gang slaying all vary  the first being completely exculpatory and the last being a confession. Porter's accounts of the victim being beaten in the head or face with a baseball bat and pistol are not supported by findings of the medical examiner who examined the body of the victim. The confession is the only evidence which linked Porter to the homicide.
As his first point on appeal, Porter claims the trial court erred in denying his *166 motion to suppress the statements he made at the various questionings. Since appellant agrees that the admissibility of the statement taken at the questioning on June 6, 1977 may not have been preserved at trial and is not fundamental to the case, we give our attention to the statements of September 18, 1977, November 5, 1977 and November 10, 1977. We find the statements of September 18, 1977 and November 5, 1977 inadmissible because they were not voluntarily made. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (American system of justice demands that the government seeking to punish an individual produce the evidence against him by its independent labors rather than the expedient of compelling it from his own mouth); Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940) (conviction of petitioner solely upon confessions and pleas extorted by violence and torture is a denial of due process and equal protection); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936) (confession shown to have been extorted by state using brutality and violence inconsistent with due process). The state is required to establish voluntariness by a preponderance of the evidence. Brewer v. State, 386 So.2d 232 (Fla. 1980). On this record, especially in light of the independent medical evidence presented by both sides tending to corroborate Porter's testimony, we hold the state has failed to establish the requisite voluntariness. In addition, we specifically find that the statements obtained from Porter November 10, 1977 are inadmissible because the statements were taken after Porter invoked his right to counsel. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
Though we reverse on the first point, we address the other issues so as to guide the trial court in the retrial of the case. As the second point on appeal, Porter claims that the State failed to prove, apart from appellant's statements and confessions, the corpus delecti in that the body was not adequately identified. We find this claim to be without merit.
As the third point on appeal, Porter claims that the trial court erred in failing to compel production of the police report of Officer Blyth because Officer Blyth was listed as a witness and the report was subject to discovery under Florida Rule of Criminal Procedure 3.220(a)(1)(i). Unfortunately, the written demand for discovery was not made part of the record on appeal so we are unable to determine whether that demand was sufficiently specific in limiting the request for the documents as required by State v. Dumas, 363 So.2d 568 (Fla.3d DCA 1978), cert. denied, 372 So.2d 471 (Fla. 1979). Our reversal on the first point raised by appellant makes it unnecessary for us to issue an order directing a party to supply the omitted part of the record under Florida Rule of Appellate Procedure 9.200(f)(2), effective January 1, 1981.
As the fourth point on appeal, Porter claims that the trial court erred in sentencing defendant to two consecutive sentences for crimes which arose out of the same transaction. Defendant claims that in this case the murder was not premeditated, therefore, he could have been convicted for the crime of first-degree murder only on the basis of the kidnapping felony. If on retrial, there is no evidence of premeditation and the kidnapping charge is the sole basis for a verdict of first-degree murder, Porter may be convicted but not sentenced for both first-degree murder and kidnapping. If there is evidence of premeditation and kidnapping, Porter may be convicted and sentenced for both first-degree murder and kidnapping. State v. Hegstrom, 401 So.2d 1343 (Fla. 1981); State v. Pinder, 375 So.2d 836 (Fla. 1979); Borges v. State, 394 So.2d 1046 (Fla. 4th DCA 1981); § 775.021(4), Fla. Stat. (1979).
Reversed and remanded for new trial.

ON MOTION FOR REHEARING
SCHWARTZ, Judge.
On consideration after oral argument of the state's motion for rehearing of our decision and opinion of November 17, 1981, we adhere to the conclusion that the judgment *167 must be reversed for a new trial because the confessions of November 9-10, 1977 were, as a matter of law, invalidly obtained contrary to the strictures of Edwards v. Arizona, 450 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
We have concluded, however, that we were unjustified in requiring suppression of the statements of September 18, 1977 and November 5, 1977 on the ground that they were the product of physical brutality by the police. Our review of the record reveals that whether any such abuse took place was the subject of sharply conflicting testimony,[1] which was solely for the trial judge and then the jury  and decidedly not this court  to resolve. Tibbs v. State, 397 So.2d 1120 (Fla. 1981); Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980); Stanford v. State, 110 So.2d 1 (Fla. 1959); Holland v. State, 39 Fla. 178, 22 So. 298 (1897).
But the record also shows that the trial court did not in fact make its determination on this question with the "unmistakable clarity" required by the Constitution. Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967); Peterson v. State, 382 So.2d 701 (Fla. 1980); see generally, Dino v. State, 405 So.2d 213, 216 (Fla.3d DCA 1981) (Pearson, J., dissenting). Indeed, in ruling on the motion to suppress the court was almost exclusively concerned with the difficult Miranda issues surrounding the November 9-10 statements,[2] so that the brutality question relating to the earlier statements was not directly decided at all. On this point, the court said only:
There was ample evidence before this Court to indicate that on three prior occasions, at least three prior occasions, he never made any inculpatory statements despite the fact he was physically abused, to which there is also a substantial question as to whether or not he was physically beaten.
The doctor testified that he didn't find any objective symptoms of that alleged beating. It was all subjective.
Since it can hardly be said that this statement constitutes a clear-cut determination of voluntariness concerning the statements of September 18 and November 5, Sims v. Georgia, supra; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Peterson v. State, supra, there must be a new hearing and a proper ruling on the motion to suppress these statements[3] prior to Porter's retrial. Greene v. State, 351 So.2d 941 (Fla. 1977); Land v. State, 293 So.2d 704 (Fla. 1974).
In every other respect we readopt the court's opinion of November 17, 1981.
FERGUSON (dissenting to rehearing).
I agree that statements obtained from Porter on November 9-10, 1977 are inadmissible because they were taken after he had invoked his right to counsel but disagree that there is a need to retreat from our initial determination that the statements of September 18, 1977 and November 5, 1977 were the product of physical brutality by the police. In light of the decision by two members of the court that suppression of the confessions was unjustified I would supplement the original opinion.
*168 After an admitted pretext arrest on September 18, 1977 for failure to produce a driver's license Porter was taken to police headquarters by Detective Gergen for a second time and interrogated for five to six hours. Detective Gergen concluded taking a statement from Porter then transported him back to his neighborhood after 11:00 P.M.  not to where he lived, nor to where his car had been left. He was seen by Dr. Goellner in the emergency room at Jackson Memorial Hospital one minute after midnight.
There is no record evidence which disputes the testimony of Porter, his mother, sister, three other eyewitnesses, and the physician called by the state that after release from police custody on September 18, 1977 Porter had a bloodied mouth and facial swelling.
Pertinent parts of the doctor's testimony appear in cross-examination at page 814 of the record:
Q. [By Mr. McWilliams] It was a cut on his lip?
A. [Dr. Goellner] Yes, sir.
Q. And it was open?
A. Yes, sir.
* * * * * *
Q. All right. You did note on your diagnosis that there was abdominal wall trauma, correct?
A. Yes.
* * * * * *
Q. Now, you also said  and you diagnosed that there was soft tissue trauma to the nose. Doctor, what is the soft tissue in the nose? Where is it?
A. The soft tissue in the nose is the skin, the layer of fibrous tissue underneath the skin. It does not include the bone, the nasal bones, and it does not include the cartilage in the nose.
Q. Now, doctor, even though the patient had told you about being beaten, you wanted to check if there were any signs of this, correct?
A. That's correct.
Q. And in order to make your diagnosis of soft tissue trauma to the nose, first of all, you looked at the nose, correct?
A. Yes, sir.
Q. And second of all, you touched to check for reactions as to tenderness, correct?
A. Yes.
Q. And it was your diagnosis, based upon what you saw and the tests that Wallace Porter did indeed have injury to the soft tissue in his nose, right?
A. Yes, sir.
[Recross Examination at page 821]
Q. Doctor, on the word "voluntary", if the patient had been struck by somebody in the stomach, to produce the injuries that you observed, you still would have used the term "voluntary" guarding, correct?
A. That's correct.
Q. What that means is the patient's reaction upon being touched, correct? As opposed to involuntary, a spasm over which there is not control whether you touch it or not.
A. Yes, sir.
Q. Sir, it doesn't mean you thought he was faking, right?
A. What you say is correct, it does not mean he was faking.
Q. In fact, it was your impression that there was soft tissue trauma to the abdomen and to the nose, correct?
A. Yes, sir.
Judge Schwartz's opinion focuses on commentary and argument rather than record evidence in arriving at the conclusion that there was sharply conflicting evidence as to whether any abuse took place. First there is the comment of the trial judge that "there is a substantial question as to whether or not he was physically beaten" and there were no "objective symptoms of that alleged beating." Those comments, it is now somewhat conceded, are inconsistent *169 with the evidence. On the subject of the abdominal injuries, verifiable only by subjective examination, the following testimony is further pertinent:
[Cross-Examination at page 589]
Q. [By Mr. McWilliams] Prior to entering the police service, you had some formal training in karate, correct?
A. [Detective Gergen] Yes, sir.
* * * * * *
Q. Part of that training is a detail study of the internal organs of the body, correct?
A. In some aspects, yes, sir.
Q. All right. The areas which to strike to cause internal injuries, correct, you studied that in your formal karate training?
A. Yes, sir.
Q. And also, part of that training is which parts of your body to use to strike another person to cause such injuries, correct?
A. That's correct.
Footnote one of the majority opinion calls attention to that part of the physician's testimony indicating that Porter may not have been physically abused with the degree of force testified to  suggesting, perhaps, that a little brutality is o.k. Lastly, the majority says the trier of fact has a right to believe that Porter harmed himself so as to justify a claim of police brutality. In the record such a theory originates with the prosecutor as mere hypothesis while examining the state's own physician-witness, refers only to puffiness of the nose, and consumes all of a single question and answer. At page 236:
Q. [By Mr. McHale] If someone took their fist and punched themselves in the nose would it cause that puffiness?
A. [Doctor Goellner] Yes, sir. Any amount of trauma would cause puffiness.
A conflict in the testimony is raised only by the denials of Detectives Gergen and Derringer  whose propensities for frenzied expediency are elsewhere chronicled in this court[1]  that they are responsible for Porter's injuries. The testimony of the police stenographer was that she could not recall anything about the defendant.
Porter's steadfast denial of any complicity in the killing of Charley Haggins on three separate days of interrogation totalling some twenty hours, during at least one of which sessions he suffered physical injuries, is subject to no other reasonable inference than that he was compelled by persistent interrogation and physical abuse to forego his Fifth Amendment privilege. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The state has the burden of proving by at least a proponderance of evidence that the challenged confession was given voluntarily. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); Brewer v. State, 386 So.2d 232 (Fla. 1980). On the facts of this case if that burden is discharged with the mere denial by police officers that they physically abused the defendant, then the duty placed upon appellate courts to independently review the entire record to ascertain voluntariness is a farce. My disagreement is not on grounds that the evidence at trial is legally insufficient or that the weight of the evidence will not support a conviction. The majority recognizes as well that there is not the required finding by the trial court that defendant voluntarily and freely waived his Fifth Amendment privileges against incrimination, and it is my opinion that on this sordid record there can be no such finding. See Cason v. State, 373 So.2d 372 (Fla. 2d DCA 1979), cert. denied, 383 So.2d 1202 (Fla. 1980) (where there is evidence of illegality surrounding confession state has a heavy burden of proving voluntariness with unmistakable clarity).
NOTES
[1] Officer Gergen had originally scheduled defendant for a polygraph examination on September 19 but cancelled it, admittedly, after Porter and his mother filed with the police department a complaint of brutality.
[1] Judge Ferguson's previous opinion for the court relies heavily upon "independent medical evidence... tending to corroborate Porter's testimony." The physician who subsequently examined him indeed stated that Porter's condition was not inconsistent with his being injured, but he also indicated it was not in accord with the degree of force which the defendant testified had been asserted against him, thus casting doubt upon his entire story. Furthermore, the doctor said that injuries he saw could well have been self-inflicted. If, as the triers of fact had the right to do, the detectives' testimony that they did not strike or brutalize Porter at all were believed, the defendant's harming himself, either alone or with the help of others  so as to justify a claim of police brutality  would be an obvious possible source of the injuries.
[2] Which were not definitively resolved until Edwards was decided two years later.
[3] Since the failure to preserve the issue at the first trial has become insignificant in the light of the necessity for a new one, the court should consider the June 6, 1977 statement as well.
[1] See, Leon v. State, 410 So.2d 201 (1982).