441 So.2d 653 (1983)
Prudence F. WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-1715.
District Court of Appeal of Florida, Third District.
October 4, 1983.
Rehearing Denied December 15, 1983.
Samek & Besser and Lawrence Besser, Miami, for appellant.
Jim Smith, Atty. Gen., and Michael Neimand, Asst. Atty. Gen., for appellee.
Before HENDRY, HUBBART and JORGENSON, JJ.
HENDRY, Judge.
Appellant Williams contests the denial of her motion to suppress her confession, the use of which led to her arrest and subsequent conviction of first degree grand theft. Because we find that appellant's confession was wrongfully extracted by the law enforcement officers involved in this case, we reverse appellant's conviction, suppress the confession, and remand for a new trial.
On Monday, February 22, 1982, Ms. Shirley Flagler, an assistant teller at County National Bank of South Florida, discovered that $95,000.00 was missing from a safe located in the main vault of the bank. An audit of the bank's funds confirmed that there was a $95,000.00 shortage. The North Miami Beach Police and the Federal Bureau of Investigation (FBI) were notified. An investigation was begun immediately that night with interviews of all tellers who had been in the vault between Friday and Monday afternoon.
Appellant, a 24 year old woman with no prior involvement with the police, was employed at the bank as a special services teller. On the previous Friday afternoon (the 19th), she had gone into the vault with a travelers check box to replenish her supply of travelers checks. The travelers checks were kept in a safe next to the safe *654 from which the money was missing. The combinations to both safes were in the back of a Wells Fargo book located in the vault area. Appellant was alone in the vault for 20-30 minutes. On Fridays there was a two hour break between the time the bank closed for the afternoon and when it reopened for evening business. During that break that Friday, appellant went to her fiance's office and to her parents' home. Appellant related all of the foregoing to Detective Lopez and Agent Jerome at her initial interview with them on February 26, 1982. She denied taking the money.
On March 9, Agent Jerome and Detective Lopez went back to the bank to conduct a second interrogation of appellant. Mr. Larry Robinette, a bank vice-president, asked appellant to stay after work to talk to the officers. The interrogation began at 6:30 p.m. and was held in the bank's conference room. Agent Jerome immediately read the Miranda[1] warnings and gave appellant a "rights waiver" form to sign, which she did. The officers spent the first fifteen minutes asking general background questions and the next two hours on appellant's duties at the bank. After approximately three hours of interrogation, appellant confessed that she stole the money. Appellant was asked if she would give a formal statement and she agreed. Agent Jerome wrote out a waiver which specifically stated that the confession was voluntary and that no promises or threats were made to induce her to confess. Appellant signed this document. A tape recorder was brought over to the bank from North Miami Beach Police headquarters. Appellant's confession was taped, transcribed, and signed by appellant while she was still being held at the bank.
Not surprisingly, there was disputed testimony at the suppression hearing and at trial[2] about what actually was said to appellant during the several hours she was being interrogated by the two law enforcement officers. All agreed that no one was allowed into the room, including appellant's fiance and parents, until after she had confessed. Only the confession was taped; the interrogation was not.
Appellant testified at both the suppression hearing and at trial that she was told that she was under arrest, that the police had all the evidence on her and that they knew how she had committed the crime. She was shown a fingerprint and was told that it was her fingerprint which had been found on the safe from which the money was stolen. She stated that she was told that if she did not confess she would go to jail for twenty years for stealing the money and another five years for lying to an FBI agent; that she would go to jail that night and that no bond would be set for her release. She was told that none of this would happen, however, if she confessed; she could bond out of jail immediately; that things would be easier for her; that they would tell the court how helpful she had been, and that since this was her first offense she would probably be put on probation for five years. Appellant also testified that pictures of her fiance, 11 year old stepdaughter, and 23 month old son were brought into the conference room from her teller's station. She was told it would be a shame to break up such a nice family by going to jail when she didn't have to. She testified that she was told that if she did not confess, she would go to jail that night and would never see her baby again; that the child would be grown before she got out of jail; that there was no one willing or able to care for her baby so he might have to be put in a foster home, and that the child would suffer by seeing her in jail. Appellant testified that she confessed because she believed that she would not see her children again. She also testified that she knew her fiance was outside waiting for her and that she asked to see him but was not allowed to until after she confessed.
*655 Agent Jerome testified at the suppression hearing that Detective Lopez mentioned "something about fingerprints" but at trial he could not recall exactly what was said. He testified that Lopez told the appellant what maximum and minimum penalties could be imposed and that Lopez mentioned bond. He stated that he told appellant that her fiance was outside but asked her not to see him at that time because "it would break the continuity of the interview." He admitted telling appellant that access to see her children would be dependent upon the rules of the particular institution where she was incarcerated but denied that he ever threatened appellant with the loss of her children. He stated that appellant was not under arrest until after she gave her confession;[3] that until she confessed they only had a hypothesis of how the crime was committed, though he admitted that he and Detective Lopez told appellant that they "knew" how she got the money out of the vault and what she did with it thereafter. At trial, Agent Jerome stated that appellant was given Miranda warnings because this was the second time she was being interviewed, though he admitted that other tellers interviewed twice were not read Miranda warnings. He stated that he did tell appellant that if she confessed, he would tell the U.S. Attorney's office about her cooperation. He denied saying that if she confessed things would be easier for her, but several other tellers testified that he used that phrase in interviews with them. Finally, Agent Jerome testified at the suppression hearing that if there were any photographs of appellant's children in that conference room, they were brought in there by appellant in her purse. At trial, he testified that photographs, located at appellant's teller station, were brought to them in the conference room by one of the bank employees.
Detective Lopez's main testimony came at the trial although he did testify briefly at the suppression hearing as a defense witness. He admitted that he lied when he showed appellant the fingerprint and told her that it had been found on the safe from which the money was stolen.[4] He denied telling appellant that she was going to jail, although he did admit saying that whoever's fingerprints were found in that vault could go to jail. He also denied telling appellant that she could or could not get bond depending on whether she confessed. He stated that no one knew that appellant's fiance was outside until after the confession and thus, appellant did not ask to see her fiance because she didn't know that he was there. He stated that appellant's children were never mentioned in the course of the interrogation and neither was there mention of access to see her children in the event she went to jail. He also stated that he saw photographs of appellant's family at her teller station only; that there were no photographs in the conference room during the interrogation. He also admitted that a search of appellant's fiance's house and appellant's safety deposit box failed to reveal the missing $95,000.00. In fact, the money has never been found.
It is established law that a confession should be excluded if the attending circumstances, or the declarations of those present at the making of the confession, are calculated to delude the prisoner as to his true position, or to exert improper and undue influence over his mind. Frazier v. State, 107 So.2d 16 (Fla. 1958); Foreman v. State, 400 So.2d 1047 (Fla. 1st DCA 1981); State v. Beck, 390 So.2d 748 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1140 (Fla. 1981). The burden of showing that a defendant's statement was voluntarily made rests with the state and must be proved by a preponderance of the evidence. Brewer v. State, *656 386 So.2d 232 (Fla. 1980); Wiley v. State, 427 So.2d 283 (Fla. 1st DCA 1983); Porter v. State, 410 So.2d 164 (Fla. 3d DCA 1981); Wimberly v. State, 393 So.2d 37 (Fla. 3d DCA), rev. denied, 402 So.2d 614 (Fla. 1981). A determination by the trial court that a confession was freely and voluntarily made comes to the reviewing court with the same presumption of correctness which attends jury verdicts and final judgments. DeConingh v. State, 433 So.2d 501 (Fla. 1983); Gilvin v. State, 418 So.2d 996 (Fla. 1982); Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980). The standard for reviewing the voluntariness of a confession is that it
"must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence... . A confession can never be received in evidence where the prisoner had been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted."
Bram v. United States, 168 U.S. 532, 542-543, 18 S.Ct. 183, 187, 42 L.Ed. 568, 573 (1897); Brewer v. State, 386 So.2d at 235, Foreman v. State, 400 So.2d at 1047.
In the case sub judice, the record reveals a course of conduct and statements which, each taken individually, might not vitiate a confession: deception, La Rocca v. State, 401 So.2d 866 (Fla. 3d DCA 1981) (polygraph examiner lied, confession voluntary); notify court of cooperation, Smith v. State, 422 So.2d 1065 (Fla. 1st DCA 1982); Bova v. State, 392 So.2d 950 (Fla. 4th DCA 1980) (not per se unlawful inducement to promise to tell of accused's cooperation), modified on other grounds, 410 So.2d 1343 (Fla. 1982); leniency, Hawkins v. Wainwright, 399 So.2d 449 (Fla. 4th DCA 1981) (statement that "things would be easier on the defendant if he told the truth" does not render a confession inadmissible); and some forms of mental distress, State v. Caballero, 396 So.2d 1210 (Fla. 3d DCA 1981) (mental distress not induced by outside sources but which originates from defendant's own apprehensions will not invalidate a confession). On the other hand, proof of brutality, Porter v. State, 410 So.2d 164 (Fla. 3d DCA 1981), or promises not to prosecute if the defendant confesses, State v. Favaloro, 424 So.2d 47 (Fla. 3d DCA 1982); In Interest of K.H., 418 So.2d 1080 (Fla. 4th DCA 1982), rev. denied, 430 So.2d 452 (Fla. 1983); Brown v. State, 413 So.2d 414 (Fla. 5th DCA 1982); Henthorne v. State, 409 So.2d 1081 (Fla. 2d DCA 1982), will vitiate a confession. When two or more of the suspect statements or courses of conduct are employed against a defendant, however, courts have found the confession to be involuntary and have suppressed its use at trial. Brewer v. State, 386 So.2d 232 (Fla. 1980) (threats, promises of leniency and statements calculated to delude the appellant as to his true position); Gaspard v. State, 387 So.2d 1016 (Fla. 1st DCA 1980) (threats, lies, physical and mental exhaustion); Hawthorne v. State, 377 So.2d 780 (Fla. 1st DCA 1979) (appeal to defendant's concern for her children, bond, exhaustion), appeal after remand, 408 So.2d 801 (Fla. 1st DCA), rev. denied, 415 So.2d 1361 (Fla. 1982); Fillinger v. State, 349 So.2d 714 (Fla. 2d DCA 1977), cert. denied, 374 So.2d 101 (Fla. 1979) (advise state attorney of cooperation, bond); Ware v. State, 307 So.2d 255 (Fla. 4th DCA) (no clear waiver of right to counsel, cooperation would mean less time away from family), cert. denied, 316 So.2d 286 (Fla. 1975).[5]
If appellant's version of the interrogation, with its recitation of lies, threats, promises of leniency, and appeals to her as *657 a mother, is correct then the confession must be suppressed as involuntary; as an unconstitutional abridgement of appellant's fifth amendment and due process rights. The state must carry the burden of proving that these rights have not been violated. In form, of course, the state's witnesses, Detective Lopez and Agent Jerome, deny her version of what went on in that room. In substance, however, their testimony, with crucial contradictions in some areas and so manifestly equivocal in other areas, confirms so many details that the conclusion is persuasive indeed that appellant's version is the correct one. Certainly, the state has failed to prove by a preponderance of the evidence that appellant's confession was voluntary. We do not find that other, circumstantial evidence against her to be so overwhelming that the constitutional error may be considered harmless. Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). Therefore, appellant's confession must be suppressed.
It is imperative that the fundamental rights of an individual charged with a violation of the law be observed and protected by law enforcement officials and by the courts. On retrial of appellant, her statements and confession, or any evidence relating thereto, are inadmissible. Hawthorne v. State, 377 So.2d 780 (Fla. 1st DCA 1979), appeal after remand, 408 So.2d 801 (Fla. 1st DCA 1982), rev. denied, 415 So.2d 1361 (Fla. 1982).
Reversed and remanded.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The procedural framework of this case was that a jury was selected and empanelled and then the suppression hearing was held outside the presence of the jury. When the motion was denied, the jury was brought in and the trial commenced immediately.
[3] Because the issue was not raised on appeal, we decline to discuss any violations of appellant's fourth amendment rights. Cf. Florida v. Royer, ___ U.S. ___, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).
[4] The crime scene technician testified that he was not able to lift any latent fingerprints at all.
[5] But see contra Burch v. State, 343 So.2d 831 (Fla. 1977), where the Court considered a startling recitation of lies, deceptions, threats and promises of leniency and still found the confession voluntary because Miranda warnings had been given and there was no physical coercion. In subsequent cases, however, the Court appears to recognize psychological coercion as grounds for vitiating a confession. Cf. DeConingh v. State, supra, and Brewer v. State, supra.