**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Carlos Ruben ALVAREZ and Tomas Hernandez, Defendants-Appellees.**

No. 86–5062.

United States Court of Appeals, Eleventh Circuit.

March 16, 1987.

Leon B. Kellner, U.S. Atty., Myles H. Malman, Sonia O'Donnell, David Leiwant, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Theodore J. Sakowitz, Federal Public Defender, Randee J. Golder, Asst. Federal Public Defender, for Hernandez.

Lawrence M. Malman, Coral Gables, Fla., for Alvarez.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, Senior District Judge.

VANCE, Circuit Judge:

This case presents the issue of whether the government may engage in undercover

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

operations after it has obtained a lawful search warrant. The district court granted defendants' motion to suppress evidence, holding that an undercover investigation undertaken after a warrant had been obtained but prior to its execution constituted "manipulation" of the judicial process and therefore invalidated the warrant search. We disagree.

On March 8, 1985, the United States Secret Service applied to a United States Magistrate for a warrant to search the premises of Master Carburetor, Inc. The warrant application was supported by an affidavit which demonstrated that Master Carburetor was processing unusually large numbers of fraudulent credit card transactions. The affidavit also noted that an examination of the credit card slips revealed that the credit cards imprinted by Master Carburetor were counterfeit. The warrant to search Master Carburetor was issued by the magistrate on March 8th and stated that the search must be executed on or before March 15, 1985.[1]

■ On the morning of March 11, 1985, two Secret Service agents entered Master Carburetor posing as bank representatives. The agents presented a "merchant questionnaire" to defendant Alvarez, the owner of Master Carburetor, and told him that the bank needed the requested information. The "merchant questionnaire" is an undercover tactic used by the Secret Service to learn which individuals at the target business are actually involved in processing the credit card transactions.[2] Alvarez completed the merchant questionnaire form for the undercover agents and permitted them to examine the credit card slips and imprinter used to transact credit card sales. The undercover agents stayed in Master Carburetor for less than fifteen minutes. Approximately fifteen minutes after they left the store, the Secret Service executed the search warrant. A team of agents entered Master Carburetor, announced the search, and seized a number of items.[3] Among the items seized during the lengthy search of the premises were blank credit card slips, pre-imprinted with counterfeit credit cards. The district court granted defendants' motion to suppress this physical evidence.

The Magistrate's Report and Recommendation, on which the district court relied, found the execution of the warrant to be unreasonable. The magistrate was troubled by the "pre-search search" or "ruse" conducted by the Secret Service when it posed as bank investigators. Although the magistrate was satisfied that the undercover operation would be lawful if conducted by itself,[4] he concluded that such a deception was not permissible when undertaken after the government possessed a warrant to search the premises. The magistrate stated two grounds for his decision to prohibit the government from engaging in undercover operations once it has a warrant.

1. Defendants assert that there was insufficient probable cause for the warrant and that the warrant was fatally overbroad. The magistrate found against the defendants on these contentions. Defendants' arguments on appeal have failed to convince this court that these findings by the court below were in error.

2. The Secret Service had visited Master Carburetor posing as bank representatives on three prior occasions. Alvarez was not present during those visits so the agents were forced to return to have the merchant questionnaire filled out.

3. Defendants also complain that the government used excessive force in executing the warrant. Although a team of at least eight agents entered Master Carburetor with guns drawn and armed with a riot gun, the officers had ample justification for taking strong measures to ensure their safety. Alvarez had been convicted of cocaine trafficking, a crime frequently connected to firearms. In addition the local police chief had warned the agents that Alvarez might have been involved in a homicide. Based on these facts, we cannot find the agents' show of force to be excessive.

4. As the magistrate correctly recognized and defendants' counsel conceded at argument, the undercover operation was lawful. The Supreme Court has consistently held that the fourth amendment affords no protection for "a wrongdoer's misplaced belief [in] a person to whom he voluntarily confides...." *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). *See also United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

I base this [holding] on two basic propositions of law. The first is that, just as a Grand Jury cannot investigate the Defendant *after* Indictment, the Government elects not to further investigate the target by subterfuge when it asks the Court to authorize entry. Otherwise there would be no occasion to obtain judicial permission. The second proposition is that the Government, executing a search warrant, *must* announce its authority and purpose, and *must* display the warrant. 18 U.S.C. § 3109. It no longer has the option of subterfuge or deceit.

■ This court is not persuaded by either of these propositions. The latter precept—that the government must announce its purpose and display the warrant—is plainly beside the point. When the agents executed the search warrant, they complied with these requirements. The agents stated their identity, displayed the warrant, and announced that their purpose was to search the premises. The lower court's confusion on this point appears to arise from the mistaken belief that the search began with the undercover operation. The term "pre-search search" is misleading. The undercover operation and the execution of the search warrant were two separate and distinct undertakings. The undercover operation in no way resembled a search. As business invitees, the agents were carefully limited in the actions they could engage in during their "ruse"; the undercover operation gathered only information that the defendants willingly volunteered in the course of their business operation. The limited scope of the undercover operation is in marked contrast to the warrant search where the agents were authorized to forcibly enter and search the entire premises.

The analogy to the grand jury also is inapposite. The grand jury serves the "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972) (footnote omitted). To perform this task, the grand jury has been extended extraordinary powers of investigation. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983). When the grand jury returns an indictment against an individual, it fulfills its appointed function. It would be illogical and abusive to allow a grand jury to continue to employ its panoply of investigatory powers against an individual after it has fully served its proper purpose by determining that a crime has been committed and indicting the responsible individual. By contrast, the function of a search warrant is to gather evidence in a criminal investigation. There is no reason for the government to halt other investigatory techniques when it obtains a warrant. These other techniques might reveal different information not available from a warrant search and useful in the execution of the warrant.[5]

Indeed, the district court's holding runs counter to the fourth amendment's aim of protecting the rights of individuals. In the

---

5. The more apt analogy may be that presented by the government. The government points to the principle that it need not indict or arrest a defendant as soon as there is sufficient probable cause to charge him with a crime. The Supreme Court in adopting that principle was chiefly concerned that the police investigation not be prematurely halted. *See United States v. Lovasco*, 431 U.S. 783, 791–92, 97 S.Ct. 2044, 2049–50, 52 L.Ed.2d 752 (1977) (Requiring the immediate filing of charges "could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitfull sources of information to evaporate before they are fully exploited."); *United States v. Watson*, 423 U.S. 411, 431, 96 S.Ct. 820, 831, 46 L.Ed.2d 598 (1976) (Powell, J., concurring) ("Good police practice often requires postponing an arrest, even after probable cause has been established, in order to place the suspect under surveillance or otherwise develop further evidence necessary to prove guilt to a jury."); *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966) ("Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."). This same concern motivates the court here.

vast majority of instances, undercover operations are far less intrusive than a full-scale warrant search. For example, the ruse in this case lasted fifteen minutes and consisted of defendants voluntarily answering some questions and showing some documents and machinery to two agents; the warrant search, on the other hand, involved the detention of defendants for approximately two hours during which time a team of officers thoroughly searched defendants' business. Less intrusive undercover operations may turn up evidence which would obviate the need for a warrant search or curtail the scope of such a search. For instance, if an undercover operation conclusively established that the items to be seized were not on the premises to be searched or resulted in the government gaining possession of all the items specified in the warrant, defendants would be spared the more intrusive warrant search. *See United States v. Marin-Buitrago,* 734 F.2d 889 (2d Cir.1984). The lower court's holding, if permitted to stand, would prohibit such undercover operations and require a full-scale search in all cases in which a warrant is obtained.[6]

This court is at a loss to identify any rights or interests advanced by suppressing the physical evidence in this case. It cannot be disputed that defendants would have no legal grounds to challenge the admission of the seized evidence if the Secret Service had conducted its "merchant questionnaire" operation on Friday and then had applied for a warrant and searched Master Carburetor on Monday. Yet the effect on defendants here is exactly the same; defendants can point to no practical difference between that clearly permissible approach and the one before this court. Only the most slavish adherent to form over substance would suppress the seized evidence based solely on the order in

which the government used its investigatory techniques.

The district court contends that an undercover operation and a warrant search, while each lawful and proper if considered independently, are rendered unconstitutional when the undercover operation is undertaken after the search warrant has been issued. No authority can be cited in support of such a novel legal theory, nor can we perceive any policy interests furthered by this result. Finding no support in logic or law for the district court's holding, we reverse the order suppressing evidence.

REVERSED and REMANDED.

---

**6.** Nothing in this opinion should be construed as weakening the government's obligation to execute the warrant in a timely fashion. In this case, the government received the warrant to search Master Carburetor on Friday afternoon and conducted its search of the business the following Monday at noon. The execution of the search took place within the seven day peri-

od specified in the warrant and within the ten day period required by Fed.R.Crim.P. 41(c). There is no evidence that there was any unnecessary delay or any prejudice from the government's execution of the warrant. *See United States v. Shegog,* 787 F.2d 420 (8th Cir.1986); *United States v. Marin-Buitrago,* 734 F.2d 889, 894 (2d Cir.1984).