506 So.2d 1094 (1987)
The STATE of Florida, Appellant,
v.
William MANNING, Appellee.
No. 86-189.
District Court of Appeal of Florida, Third District.
May 5, 1987.
*1095 Robert A. Butterworth, Atty. Gen., and Debora J. Turner, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Asst. Public Defender, for appellee.
Before BARKDULL, HENDRY and JORGENSON, JJ.
JORGENSON, Judge.
This is a state appeal of an order of the trial court suppressing the confession of William Manning. We have jurisdiction. Fla.R.App.P. 9.140(c)(1)(B).
Manning's wife, Margaret, took their five-year-old daughter to a physician who diagnosed the child as having contracted gonorrhea. HRS investigated the incident and asked law enforcement officials to further investigate the apparent sexual battery upon the child. Manning became a suspect, eventually confessed, and was charged with sexual battery upon a person less than twelve years of age. The trial court suppressed his confession on the stated basis that the officers "failed to advise the Defendant as to his true situation" and "exerted undue influence upon the Defendant to obtain a confession or admission." The State appeals, and we reverse.
Manning, a 33-year-old college graduate and former school teacher, was interviewed twice in noncustodial circumstances by Detective Osborn. Osborn informed Manning at the first interview that he was a suspect, and, at both interviews, Osborn informed Manning of his Miranda rights. Manning made no inculpatory statements at these two interviews but did give his written authorization to check his medical records. At the conclusion of his investigation, Osborn secured an arrest warrant for Manning for the offense of sexual battery. On the morning of November 15, 1984, at 10:00 a.m., Osborn located Manning at his place of employment and told Manning that he needed to question him further. He did not tell Manning that he had a warrant for his arrest or that he was under arrest.
At the police station at 10:40 a.m., Manning was advised of his rights, and he signed a waiver of rights form. The interview began. Initially, Manning denied everything, including having a venereal disease. Osborn told him that there was evidence in his medical records that he had had a venereal disease. Including occasional rest breaks, approximately an hour and a half of questioning by Osborn occurred before Manning admitted that he had previously had a venereal disease and that he was currently taking ampicillin for gonorrhea. In fact, there was no definite evidence of venereal disease in his medical records. According to one of the records, Manning had been treated for urinary frequency the year before. The problem was tentatively diagnosed as a kidney infection. A question mark was written next to the initials V.D., and a form of penicillin was prescribed.
At approximately 11:30 a.m., Detective Osborn informed Manning that he was under arrest and showed him the arrest warrant. Following a break for lunch, the interview continued at 12:50 p.m. Manning was again advised of his rights by a new investigator, Lieutenant Brooks. Manning once again signed a waiver of rights form. Brooks told Manning that his wife and daughter had implicated him in the sexual battery of his daughter. Though Manning's wife and daughter did give statements to that effect, Brooks did not know of those statements at the time he spoke to Manning. Like Detective Osborn, Lieutenant Brooks also gave Manning several rest breaks during the questioning that afternoon. During this session, Manning, in response to Brooks' questions as to how his daughter might have become infected with gonorrhea, admitted to an incident when he placed his penis on his daughter's vagina.
*1096 At 4:00 p.m., the police took a formal statement from Manning in which he admitted committing sexual battery on his daughter. In that statement, he also responded that he had not been threatened, that he had been treated well, that he felt okay, that he knew what was going on, and that he knew what he had done to his daughter was wrong. The statement was typed up and read back to Manning page by page. He actually signed the statement at 6:15 p.m.
Manning moved to have his confession suppressed. The trial court granted the motion to suppress, making the following findings:
1. The police officers in this case failed to advise the Defendant as to his true situation. Although they had secured an arrest warrant for him and taken him into custody, they failed to tell him he was under arrest. The Court finds the Defendant was under constructive arrest and had he known this he may have refused to answer questions and may have requested an attorney.
2. The officers who testified at the Motion to Suppress misled the Defendant into thinking they had medical records indicating the Defendant had gonorrhea, when in fact they did not have such records. The Defendant was advised that the victim, his daughter, had gonorrhea.
3. The Court finds that because of the above police actions the interrogating officers exerted undue influence upon the Defendant to obtain a confession or admission.
The suppression of the confession was not based on any finding regarding statements made to Manning that his wife and daughter had implicated him in the offense. We now address each of the court's findings in turn.

I. Waiver of Rights
The court's first finding, that if Manning had known he was under arrest he might have refused to answer questions and might have requested an attorney, although not stated in such terms, is a determination that Manning's waiver of his rights was not a valid waiver. There is no question on this record that Manning was in custody and waived his Miranda rights, both orally and in writing. A defendant may waive his fifth amendment privilege against self-incrimination provided the waiver is made knowingly and intelligently and the waiver is made voluntarily without being coerced from the defendant. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707 (1966). The Supreme Court explained further in Moran v. Burbine, 475 U.S. 412, ___, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421 (1986), that two separate inquiries regarding the waiver must be made. The first is whether the waiver was a free choice on the part of the defendant and not the product of intimidation, coercion, or deception. The second is whether the waiver was made with a full awareness of the nature of the right being abandoned and the consequences of its abandonment. Both determinations are made by considering the totality of the circumstances. Fare v. Michael C., 442 U.S. 707, 724-26, 99 S.Ct. 2560, 2571-72, 61 L.Ed.2d 197, 212-13 (1979).

A. Voluntary Waiver
As to the first inquiry, the trial court found that Manning's waiver of rights might not have been made had he known he was under arrest. The fact that Manning was not immediately informed that he was under arrest is insufficient to find that his waiver was not voluntary. When a defendant has not been placed under arrest, determining whether he is constructively under arrest or in custody is necessary for the purpose of determining whether a defendant must be read his rights. See New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). There is no question that Manning was read his rights many times. The trial court confused Manning's custodial status with the timing of the officer's acknowledgment to Manning that a warrant for his arrest had been *1097 procured.[1] Just as an undercover investigation may continue, notwithstanding the fact that a search warrant has been issued, United States v. Alvarez, 812 F.2d 668 (11th Cir.1987), if all other criteria have been satisfied, an interrogation may take place notwithstanding the fact that an arrest warrant has been issued.
Of those cases which have determined that the police conduct was oppressive, "all have contained a substantial element of coercive police conduct," Colorado v. Connelly, ___ U.S. ___, 107 S.Ct. 515, 520, 93 L.Ed.2d 473, 482 (1986), which simply is not present here. See Fare, 442 U.S. at 725-28, 99 S.Ct. at 2571-73, 61 L.Ed.2d at 212-14 (mere indication by police that a cooperative attitude would be to respondent's benefit not sufficient to find waiver coerced).

B. Knowing Waiver
As to the second inquiry, any omissions or misstatements of fact did not affect Manning's full awareness of the nature of the right being abandoned and the consequences of its abandonment. At both preliminary noncustodial interviews Manning was informed of his rights, and, at the first interview, he was told that he was a suspect. He gave his written consent for the police to check his medical records. When Manning was taken to the police station, he was again advised of his rights and he signed a waiver of rights form. Being of normal intelligence and a college graduate, he was surely aware of the import of the questions leveled at him during his time at the police station.
Whether a defendant had a full awareness of the nature of the right being abandoned and the consequences of its abandonment was the issue examined by the Supreme Court in Moran. In that case, unbeknownst to the defendant his sister had hired an attorney who was trying to reach him while he was being interrogated. The Supreme Court held that failing to inform the defendant that the attorney was trying to reach him did not constitute "trickery" forbidden by Miranda. Withholding such information, the Court stated, is only relevant "if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Moran, 475 U.S. at ___, 106 S.Ct. at 1142, 89 L.Ed.2d at 422. Because Burbine was aware of and comprehended "all the information Miranda requires the police to convey," his waiver of his right to remain silent was valid. Id.; see Colorado v. Spring, ___ U.S. ___, 107 S.Ct. 851, 859, 93 L.Ed.2d 954, 967 (1987) ("a valid waiver does not require that an individual be informed of all information `useful' in making his decision or all information that `might ... affec[t] his decision to confess'" (quoting Moran, 475 U.S. at ___, 106 S.Ct. at 1142, 89 L.Ed.2d at 421)). "[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self interest in deciding whether to speak or stand by his rights." Moran, 475 U.S. at ___, 106 S.Ct. at 1142, 89 L.Ed.2d at 421.

II. Voluntary Confession
The trial court's second finding, that the police misled Manning into thinking they had medical evidence that they did not have, and its third finding, that because of the detective's silence about the arrest and the detective's misstatements about the medical records the officers exerted undue influence, again, although not stated in those terms, is a determination that Manning's confession was not voluntary. Accepting the trial court's finding that the facts showed that the officers made false statements about Manning's medical records, its determination of undue influence was incorrect.
The use of tricks or factual misstatements in and of itself does not render a confession involuntary. Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 *1098 L.Ed.2d 684, 693 (1969); see Moore v. Hopper, 389 F. Supp. 931, 934 (M.D.Ga. 1974), aff'd, 523 F.2d 1053 (5th Cir.1975), and authorities cited therein. There must be coercion involved, and a misstatement of fact is not coercion. United States v. Castaneda-Castaneda, 729 F.2d 1360 (11th Cir.1984), cert. denied, 469 U.S. 1219, 105 S.Ct. 1202, 84 L.Ed.2d 345 (1985). While a misstatement may affect the voluntariness of the confession, the effect of the misstatement must be considered in light of all the surrounding circumstances. Frazier, 394 U.S. at 739, 89 S.Ct. at 1425, 22 L.Ed.2d at 693 (citing Clewis v. Texas, 386 U.S. 707, 708, 87 S.Ct. 1338, 1339, 18 L.Ed.2d 423, 426 (1967)); Miller v. Fenton, 796 F.2d 598, 607 (3d Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986).
In Frazier, the police used a typical interrogation technique  they told the defendant that his co-defendant had confessed. The Supreme Court found that while the misstatement by the police was relevant it did not make the confession inadmissible. The Court noted that the questioning was of short duration and the defendant was a mature person of normal intelligence. Under the totality of the circumstances, the Court concluded, the confession was not coerced. Frazier, 394 U.S. at 739, 89 S.Ct. at 1425, 22 L.Ed.2d at 693. In Castaneda-Castaneda, a customs inspector used the same technique  he told each co-defendant that the other co-defendant had confessed. The Eleventh Circuit found that under the totality of the circumstances the confessions were voluntary and not coerced.
Florida's view of misstatements of fact by the police is in accord with federal law. Courts have distinguished between police misstatements which delude a defendant as to the import of his confession, Thomas v. State, 456 So.2d 454 (Fla. 1984), and are thus improper, and police misstatements of relevant facts, which can be proper, Denmark v. State, 95 Fla. 757, 116 So. 757 (1928).
The circumstances of Manning's interrogation are different from those cases where the police have either threatened the defendant with harm if he did not confess or promised the defendant leniency if he did confess. Those cases require a different result. Indeed, the Florida courts, as do the federal courts, uniformly hold such techniques require suppression. Brewer v. State, 386 So.2d 232 (Fla. 1980); Frazier v. State, 107 So.2d 16 (Fla. 1958); see Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (policeman, a childhood friend of defendant, told defendant that his job was in danger unless defendant confessed and that loss of the job would be disastrous for his wife, children, and unborn child). Manning's reliance upon Williams v. State, 441 So.2d 653 (Fla. 3d DCA 1983), rev. denied, 450 So.2d 489 (Fla. 1984), is misplaced. Williams focused upon the threat of harm/promise-of-leniency aspect which is uniformly condemned; it did not deal with misstatements of fact.
A confession obtained by a misstatement of fact is admissible as long as it is voluntarily made. "It is fear of material or physical harm, or hope of material reward, which renders a confession inadmissible... . . A confession voluntarily made, but procured by artifice, falsehood, or deception, is admissible." Grant v. State, 171 So.2d 361, 363 n. 1 (Fla. 1965) (quoting Denmark, 95 Fla. at 762, 116 So. at 759), cert. denied, 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966).
The trial court's finding that by their actions the officers exerted undue influence upon Manning to obtain a confession runs counter to the foregoing cases. Given the totality of the circumstances, it is clear that Manning's confession was voluntary. Manning is a college graduate. He was fully informed of his rights, and he knowingly and voluntarily waived them. He had given the police written permission to check into his medical records and was well aware that he had had a venereal disease in the past. Therefore, the announcement to him that his records showed evidence of a venereal disease should in no way have surprised Manning and could not have coerced him into confessing. Likewise, the omission of the information that he was under arrest did not amount to undue influence *1099 upon Manning, who knew all along that he was the focus of their criminal investigation. The trial court's order does not suggest that the investigators used any techniques suggesting physical or mental harm or hope of material reward which would render the confession involuntary. Any deception practiced on Manning was not the sort of deception which would make an innocent person confess. "Just as trickery may be employed prior to the act to detect the offense, it may be utilized after the act to identify the offender." Moore, 389 F. Supp. at 935. We agree with the Court of Special Appeals of Maryland that when dealing with suspects "[d]eception short of an overbearing inducement is a `valid weapon of the police arsenal.'" Rowe v. State, 41 Md. App. 641, 645, 398 A.2d 485, 488 (1979) (quoting Hopkins v. State, 19 Md. App. 414, 424, 311 A.2d 483, 489 (1973)).
For the foregoing reasons, the order of suppression is reversed and this cause is remanded for further proceedings.
Reversed and remanded.
NOTES
[1] Manning does not contest the validity of the arrest warrant nor does he allege any fourth amendment violation. See Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (implicates fourth amendment considerations as applied to confessions in the absence of a valid arrest warrant).