343 So.2d 831 (1977)
Jackson B. BURCH, Appellant,
v.
STATE of Florida, Appellee.
No. 45359.
Supreme Court of Florida.
March 10, 1977.
*832 Thomas L. Brown of Brennan, Brown & Avery, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
PER CURIAM.
This cause is on direct appeal from conviction of premeditated murder and imposition of the death sentence by the trial court following a jury recommendation of life imprisonment. We have jurisdiction.[1]
Appellant was arrested May 1, 1973, for the stabbing death of a young woman. Her body was discovered April 23, 1973, buried beneath the natural sand floor of a pump house located along a seawall. She had been missing since April 10, 1973, when she was last observed walking along the beach in the same general vicinity. Her body was decomposed when found so that the date and time of death could not be fixed exactly. The corpse revealed 35 or 36 puncture wounds of the type a small knife would produce, but disclosed no evidence of a completed rape. Appellant's confession, corroborated by physical evidence at the crime scene, established that a rape was attempted before the victim was killed.

I.
The first issue concerns the voluntariness of appellant's confession. Appellant was questioned for the first time on the morning of May 1. The questioning took place simultaneously with that of two other men, and occurred near the crime scene in the neighborhood where the men worked. All three men then generally asserted ignorance of any facts pertaining to the crime. The two detectives doing the questioning returned after lunch for further inquiry. Appellant was asked to go with them to the sheriff's office for more questioning that afternoon. Appellant voluntarily agreed, being specifically advised that he was not under arrest and that he could not be compelled to go. During the auto ride to the sheriff's office, the detectives conversed normally with appellant, and briefly advised him again of his Miranda rights. On arrival, appellant consented to fingerprinting and was fully advised of his Miranda rights. Appellant was told he was there for interrogation and was a suspect in the homicide of the young woman, but that he was not under arrest and could leave at any time. Appellant agreed to remain in the sheriff's office for questioning.
From approximately 2:30 p.m. until 8:00 p.m., appellant was questioned by one or more of a group of five sheriff's deputies regarding the killing. He was vigorously accused of the crime, incriminating evidence against him was fabricated to lever a confession, and a pretended polygraph examination was attempted on him with his consent. Appellant maintained his innocence through all those attempts to secure his confession. Appellant then was informed he had failed the pretended polygraph test, i.e., that he had lied when denying the killing. The detective interrogating him stated he would make the decision whether to charge appellant with first or second degree murder and that he wanted to believe appellant had not premeditatedly killed the girl. He also advised the appellant to consider the difference between a capital crime and a seven-to-twenty year sentence in determining whether to confess and explain the circumstances.
Thereafter appellant admitted the killing. He confessed to forcing the victim into the pump house, removing her clothes, attempting intercourse with her, and upon failing that, mentally blanking out during an apparently frenzied assault on her with his pocketknife. Appellant's signed confession which resulted from the interrogation was admitted into evidence over protestations of involuntariness and coercion by counsel. Although fully advised of his rights, appellant never asked to leave, requested an attorney, or asked the interrogator to stop.
*833 The trial judge held the confession admissible. Counsel now asserts the confession was coerced. A coerced confession may vitiate the conviction. Lynumm v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Williams v. State, 188 So.2d 320 (Fla.App.2d 1966). But see Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
Circumstances that have been construed as sufficient to constitute coercion include driving an accused from county to county for three days without benefit of counsel ostensibly to protect him from mob violence incited by his crime;[2] falsely threatening an accused at the scene of the crime and immediately upon her arrest with the loss of her children and welfare support;[3] and confining a prisoner accused of rioting to a punishment cell six and one-half feet wide by either seven or thirteen feet long for thirty-five days, naked, with two other men, fed only twelve ounces of soup and eight ounces of water daily, with a floor-level hole in one corner for excretions.[4]
Circumstances found not coercive to the point of invalidating a conviction appear in Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). In this case Escobedo but not Miranda was applicable. There was a false police assertion that the accused's partner in crime had confessed. The court construed that evidence relevant to the validity of the confession, but held the falsity, "insufficient ... to make [the] confession inadmissible," 394 U.S. at 739, 89 S.Ct. at 1425. The court applied the "totality of circumstances" test of Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), to uphold admissibility of the confession. See also Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941).
We view the forces exerted in the instant cause in order to obtain the confession of appellant as somewhat greater in quantity but of the same quality as those in Frazier v. Cupp, supra. The elements of physical coercion common to confessions deemed invalidated are absent. There were complete Miranda warnings, and we hold the confession admissible.

II.
The next issue arises from appellant's assertion that there was insufficient evidence before the jury to support beyond a reasonable doubt its finding appellant sane. Opinions of four lay-witnesses for the defense, and opinions of three psychiatrists, one for the state and two by the defense, were presented on this issue. Two of the three psychiatrists testified they believed that appellant was sane, that he knew the difference between right and wrong, when he began stabbing the victim, but lost contact with reality as he continued. The third testified he was uncertain whether appellant became temporarily psychotic before or after he began stabbing the victim. The testimony was conflicting and the appellant's assertion that the state did not meet its burden of establishing beyond a reasonable doubt the sanity of appellant is without merit. The jury had expert testimony from two sources that appellant was sane when the attack commenced. This is sufficient evidence to support its finding of sanity beyond a reasonable doubt. See Byrd v. State, 297 So.2d 22 (Fla. 1974).

III.
The final issue concerns the imposition of the death sentence. The trial jury recommended life imprisonment. The trial judge found the mitigating circumstances consisted of no prior history of criminal *834 activity, and a substantially impaired capacity to appreciate the criminality of his conduct, or to conform it to the law. The trial judge however imposed the death sentence, finding "insufficient mitigating circumstances to outweigh the aggravating circumstances." In aggravation he found the act was committed while appellant was engaged in the commission or attempt to commit rape, and that the act was especially heinous, atrocious, or cruel.
We previously have expressed our view on the consideration to be given the jury recommendation:
"... A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ. .." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975).
Under the provisions of Section 921.141(6), Florida Statutes (1975), there are two categories of mitigating circumstances relating to a defendant's mental condition which are to be considered by the jury. These provisions are:
"(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
* * * * * *
"(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."
We previously have determined that under our rule of competency the jury could have concluded from the evidence that the defense of not guilty by reason of insanity was not available to the defendant. The evidence does however establish that at the time of the offenses the defendant was mentally disturbed, and his capacity to conform his conduct to the requirements of law was substantially impaired as found by the trial judge. It is apparent that the jury's recommendation for a life sentence was predicated upon the appellant's mental condition. See concurring opinion by Justice Sundberg in Jones v. State, 332 So.2d 615 (Fla. 1976). The legislature specifically authorized the jury to consider such circumstances. For us to approve the imposition of the death sentence, we must find some compelling reason for the trial judge's rejection of the jury's recommendation of life imprisonment. We find none, and therefore must overrule the imposition of the death penalty.
The sentence of death is hereby vacated, and the life sentence without eligibility of parole for twenty-five years is hereby imposed. In all other respects, the judgment of the trial court is affirmed.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND and SUNDBERG, JJ., concur.
ADKINS and ROBERTS (Retired), JJ., and MUSZYNSKI, Circuit Judge, concur in conviction, but dissent on sentence and would impose death sentence.
NOTES
[1] Fla. Const., Art. V, § 3(b)(1).
[2] Ward v. Texas, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663 (1942).
[3] Lynumm v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963).
[4] Brooks v. Florida, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643 (1967).