DANIEL S. PEARSON, Judge.
The State and counsel for Fuller entered into an agreement under which Fuller would submit to a polygraph examination. The attorney for the State confirmed the agreement by letter, stating in pertinent part:
“It was agreed that the results and conclusions of Mr. Slattery's examination be admissible in any hearings and/or trial regarding Circuit Court Case No. 79-7600. I agreed on behalf of the State that if your client passed the polygraph examination, I would nolle prosse the charges against Mr. Fuller. If the polygraph test is inconclusive, then the examination is not admissible in any hearing or trial regarding Circuit Court Case No. 79-7600.” (emphasis supplied).
Pursuant to this understanding, Fuller met with George Slattery, the polygraph examiner. There Fuller, upon advice of counsel, executed three separate forms, two of which warned that anything Fuller said could and would be introduced into evidence in court against him, and all of which contained his acknowledgment that he freely and voluntarily submitted to the polygraph examination without any promises having been made to him.
The result of the polygraph test was inconclusive. Thereafter, the State notified Fuller of its intention to introduce statements made by him during the course of the four-hour pretest interview conducted by Slattery. Fuller sought to have his statements suppressed based upon the agreement between his counsel and the State. The trial court granted Fuller’s motion to suppress, and the State appealed.
We construe the agreement strictly against the State, its author. The State’s use of the phrase “results and conclusions” in one instance, and the word “examination” in another, is a clear recognition of *1041 the distinction between the two.[1] Yet the State tells us that when it agreed the “examination” would not be used, it meant the “results” of the examination.[2] Quite obviously, had Fuller failed the test, the State would have urged the admissibility of his pretest interview statements by arguing conversely that when it agreed that “results and conclusions” would be used, it meant the “examination.”[3]
Moreover, as Slattery testified, and as is universally accepted, see generally, N. Ansley, Legal Admissibility of the Polygraph (1975); The Use of Polygraphs and Similar Devices by Federal Agencies: Hearings Before A Subcommittee of The Committee On Government Operations, H.R., 93d Cong., 2d Sess. 6 (1974), the pretest interview is an essential part of a polygraph examination. Thus, the State cannot seriously contend that the word “examination” was limited to the several-minute polygraph test and did not include the four-hour pretest interview.
We conclude, therefore, that the agreement made by the State was that if the test results were inconclusive, the pretest interview was inadmissible. Our conclusion makes irrelevant the fact that Slat-tery administered warnings to Fuller and that Fuller freely and voluntarily spoke to Slattery in the pretest interview.[4] It is obvious that Fuller spoke to Slattery pursuant to his understanding with the State, and that understanding controls. Nothing in the record suggests anything in the Slat-tery warnings which would apprise Fuller that notwithstanding his previous agreement, his statements would be used.[5] Where an accused waives his constitutional right to remain silent in exchange for an agreement that his statements will not be used under certain conditions which are fulfilled, the bargain made by the State will be *1042 enforced. Cf. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
Accordingly, the order of the trial court suppressing Fuller’s statements to Slattery is affirmed.
Affirmed.

. As the trial court remarked, “there certainly [is] a difference between an examination and the result of an examination.” Finding no ambiguity, the court did not entertain parol evidence as to the meaning of the agreement. Defense counsel remarked in argument that it was his understanding that if “it came back inconclusive, forget it. It wasn’t for the purpose of them making the case and getting discovery.”

. The construction suggested by the State would produce the anomalous result that if Fuller failed the test, his pretest interview statements would be inadmissible, but if the test were inconclusive, these same statements would be admissible. Further, it would be absurd to think that defense counsel merely bargained for the inadmissibility of inconclusive results which are likely inadmissible in the absence of a bargain. Expert testimony is admissible only if it “will assist the trier of fact in understanding the evidence or in determining a fact in issue.” § 90.702, Fla.Stat. (1979). Relevant evidence is that which tends “to prove or disprove a material fact.” § 90.401, Fla.Stat. (1979). It is improbable that the inconclusive results of a stipulated polygraph would be admissible, except perhaps to rebut the improper suggestion that the defendant passed or failed.

. “Then you should say what you mean,” the March Hare went on.
“1 do,” Alice hastily replied; “at least — at least I mean what 1 say — that’s the same thing, you know.”
“Not the same thing a bit!” said the Hatter. “Why, you might just as well say that ‘I see what I eat’ is the same thing as ‘I eat what I see’!”
“You might just as well say,” added the March Hare, “that ‘I like what I get’ is the same thing as ‘I get what I like’!”
“You might just as well say,” added the Dormouse, who seemed to be talking in his sleep, “that T breathe when I sleep’ is the same thing as ‘1 sleep when 1 breathe’!”
Carroll, Lewis. Alice’s Adventures in Wonderland, “A Mad Tea Party.”

. The existence of the agreement with the State differentiates this case from others which hold that voluntary statements made to a polygraph operator are admissible notwithstanding the legal inadmissibility of the results. See e.g., Hostzclaw v. State, 351 So.2d 970 (Fla.1977); Burch v. State, 343 So.2d 831 (Fla.1977); Roberts v. State, 195 So.2d 257 (Fla.2d DCA 1967); Johnson v. State, 166 So.2d 798 (Fla.2d DCA 1964). Compare State v. Cunningham, 324 So.2d 173 (Fla.3d DCA 1975).

. The State argues that if the agreement had been not to use the pretest interview in the event of inconclusive results, no purpose would be served by the warnings. But it is equally plausible that the purpose of the Slattery warnings was to insure the voluntariness, and thus admissibility, of statements made in the pretest interview in the event Fuller failed the test.