838 So.2d 672 (2003)
MIAMI-DADE POLICE DEPARTMENT, Appellant,
v.
William F. MARTINEZ, and In re Forfeiture of 101,100.00 in United States Currency, Appellee.
No. 3D01-3391.
District Court of Appeal of Florida, Third District.
March 5, 2003.
*673 Judith E. Secher, for appellant.
Barrett, Rogers & Associates and William L. Rogers, Miami, for appellee.
Before SCHWARTZ, C.J., and GERSTEN and FLETCHER, JJ.
SCHWARTZ, Chief Judge.
The Miami-Dade Police Department, the petitioner in a proceeding for the forfeiture of $101,100.00 which allegedly belonged to the appellee William Martinez, appeals from an order suppressing the money on Fourth Amendment grounds. Specifically, although it is undisputed that the cash was found during a search to which the owner and occupant of the premises, Mrs. Victoria Cepeda, Martinez's mother, voluntarily consented, the trial court held that (a) the searching officers' alleged misrepresentation that the object of their proposed search was only for weapons, rather than for money and drugs, invalidated the consent and (b) the actions of the officers whoin the presence of and without objection from Mrs. Cepedaopened a duct taped cereal box *674 which contained the money and which was itself found within an open lock box inside a safe, exceeded the scope of even a valid consent thus requiring suppression. We reverse upon the holdings that both of these determinations are contrary to the law.

I.
It is clearly established that the mere fact that, as the trial judge found,[1] Mrs. Cepeda's consent may have been induced by a deception as to what the officers were really looking for does not poison a consensual search which, as was plainly the case here, was otherwise voluntary under the totality of the circumstances.[2]Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); People v. Zamora, 940 P.2d 939 (Colo.Ct.App.1996); Dormezil v. State, 754 So.2d 168 (Fla. 5th DCA 2000), review denied, 805 So.2d 805 (Fla.2001). To the contrary, "deception, standing alone does not invalidate consent." Zamora, 940 P.2d at 942 (emphasis added).[3] For example, in Zamora, the court upheld a consent search induced by misrepresentation of the officers, who were actually searching for evidence of an assault in the defendant's *675 apartment, that they merely wanted to look at the apartment's layout to aid in an investigation of a domestic dispute in an adjacent one. Similarly, in United States v. Andrews, 746 F.2d 247 (5th Cir.1984), cert. denied, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985), overruled on other grounds, United States v. Hurtado, 905 F.2d 74 (5th Cir.1990), a misrepresentation that the federal agents wanted to see the defendant's sawed off shotgun to try to connect it with a robbery, when their actual purpose was to establish the illegal possession of the firearm itself did not taint the defendant's consent. Accord Schneckloth, 412 U.S. at 218, 93 S.Ct. 2041; United States v. Carter, 884 F.2d 368, 375 (8th Cir.1989)(stating rule that deception "standing alone" does not invalidate consent). See generally People v. Santistevan, 715 P.2d 792 (Colo.1986), cert. denied, 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986)(misrepresentation by police about the purpose of a search may weigh against a finding of consent but does not invalidate consent); State v. Johnson, 253 Kan. 356, 856 P.2d 134 (1993)(police could obtain consent to search by claiming they were looking for a third party); State v. Watson, 416 So.2d 919 (La.1982)(police may search suitcase for drugs by obtaining owner's consent to search suitcase for identification); Commonwealth v. Morrison, 275 Pa.Super. 454, 418 A.2d 1378 (1980)(police may misrepresent both identity and purpose to obtain consent to enter home), cert. denied, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

II.
We find similar error in the conclusion that the scope of the search exceeded Mrs. Cepeda's consent, valid or not. To the contrary, because the search was of no greater intensity than they represented they would in fact make, the officers did not impermissibly go beyond its lawful scope. In other words the officers could have reasonably concluded that the weapons they were allegedly searching for, see supra note 1, could have been in the safe or the closed metal box which was within that safe, or in the cardboard box within the metal one.
When a warrantless search is conducted pursuant to consent, the police "have no more authority than that reasonably conferred by the terms of the consent." Dominguez v. State, 616 So.2d 506 (Fla. 3d DCA 1993)(quoting State v. Wells, 539 So.2d 464, 467 (Fla.1989), aff'd on other grounds, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)), review denied, 624 So.2d 268 (1993). The standard for measuring the scope of a consent is one of objective reasonableness, what an ordinary reasonable person would understand, under all the circumstances, including the purported purpose of the search, was the scope of consent between the officer and the consenting person. See Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).
There is no doubt that Cepeda had authority to allow the search of a safe in her bedroom to which she had the combination, and in which she kept gold and her jewelry. Even if her consent were limited to weapons as Cepeda alleges, the safe, and the metal box within the safe, were reasonably capable of containing weapons or their parts. We find therefore that this consent extended to containers within the safe as well as a matter of law.
Our conclusion to this effect is dictated by State v. Martin, 635 So.2d 1036 (Fla. 3d DCA 1994). In that case, the police had arrested the defendant and then obtained his wife's consent to search their home for stolen property. A police officer found a jewelry bag in a master bedroom closet and asked the defendant's wife whose bag *676 it was. She replied only that she "hadn't seen it." The officer then opened the bag and found property later identified as having been stolen in the robbery. The trial court granted the defendant's motion to suppress the bag and its contents finding that the consent to search was valid but did not extend to the container in the closet. This court reversed on the finding that the wife had authority to consent to the search through her joint control and common authority over the premises, that the bag was within the scope of consent because it was within an area authorized to be searched, and was reasonably capable of containing the stolen property. 635 So.2d at 1038. The court noted that the wife, like Ms. Cepeda, was present during the search and had the opportunity to limit the scope or discontinue it, but did not do so. See United States v. McSween, 53 F.3d 684, 688 n. 5 (5th Cir.1995)("[W]e are unwilling to read Jimeno to hold ... that enforcement officials must conduct all searches in plain view of the suspect, and in a manner slowly enough that he may withdraw or delimit his consent at any time during the search."), cert. denied, 516 U.S. 874, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995).
Because cases like Martin apply even when there is an alleged misrepresentation as to the purpose of the search, see United States v. White, 706 F.2d 806 (7th Cir. 1983)(scope of consent to search for drugs extended to bag containing stolen money and officer's subjective intent to search for money immaterial); State v. Watson, 416 So.2d 919, 921 (La.1982)("[T]he police may have slightly misstated their purpose, but the scope of the search was of no greater intensity than they represented they would make."), we think that Martin requires reversal on this point. Accord United States v. Mendoza-Gonzalez, 318 F.3d 663 (5th Cir.2003)(scope of defendant's consent to look in back of truck not exceeded by officers' slicing through tape on cardboard box and looking in where slicing accomplished with minimal force, did not impair box's functionality, and did not affect contents); United States v. Flores, 63 F.3d 1342 (5th Cir.1995)(scope of consent to search car not exceeded where officers unscrewed vent covers from interior panels of car), cert. denied, 519 U.S. 825, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996).

III.
For these reasons, there was no Fourth Amendment violation, and the order below is therefore reversed. The cause is remanded for denial of the motion to suppress and for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] We note that many of the trial court's factual determinations are shockingly inconsistent with the realities of the situation. For example, there is no rational explanation why the officers, including a Secret Service agent who was there specifically to look for counterfeit currencya $100 counterfeit bill was actually foundand who testified that they had correctly stated their intentions to Ms. Cepeda, would have, as she contrarily testified, claimed that they were looking only for weapons: a finding which would obviate the factual and legal conclusions that a mis representation spoiled the consent and that the search exceeded the consent. In these and several other respects, we think that the facts as found below may be so offensive to the "appellate conscience and ... so obviously contrary to the manifest justice of the case" that they should not be relied upon. Miller v. First American Bank and Trust, 607 So.2d 483, 484 (Fla. 4th DCA 1992); see Florida Nat'l Bank v. Sherouse, 80 Fla. 405, 406, 86 So. 279, 279 (1920)("[I]f a decree is manifestly against the weight of the evidence, or contrary to the legal effect of the evidence, then it becomes the duty of the appellate court to reverse the same."); Newman v. Smith, 77 Fla. 633, 650, 82 So. 236, 241 (1918)("Where the finding of a trial judge is contrary to the legal effect of the evidence on the issues made the appellate court should reverse the finding, even though the trial judge personally saw and heard the witnesses testify, and even though there were conflicts in the testimony, and there was some evidence tending to support the finding."); Branam v. Aqua-Clear Pools, Inc., 672 So.2d 69 (Fla. 3d DCA 1996); Ziontz v. Ocean Trail Unit Owners Ass'n, Inc., 663 So.2d 1334 (Fla. 3d DCA 1993).

We are content, however, to make this observation only in dictum and place it only in a footnote because even accepting the trial judge's findings, reversal is nevertheless required.
[2] In the light of Mrs. Cepeda's testimony that she was simply "nervous" prior to her consent and gave no other indication of undue pressure by the officers, there is nothing to support the trial court's finding that the officers' presence resulted in a "coercive and misleading atmosphere." Compare United States v. Gillespie, 650 F.2d 127 (7th Cir. 1981), cert. denied, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1981)(no voluntary consent where defendant confronted at his door by five FBI agents and police officers with drawn shotguns and revolvers, stating that they were looking for fugitives); Norman v. State, 379 So.2d 643 (Fla.1980)(coercive setting and consent involuntary where the result of initial illegal police activity and defendant not free to leave); Lockwood v. State, 470 So.2d 822 (Fla. 2nd DCA 1985)(consent coerced where defendant threatened with removal of children).
[3] As pointed out in W.R. LaFave, 3 Search and Seizure: A Treatise on the Fourth Amendment § 8.2(n), at 710 (3d ed.1996), this rule, adopted by the Supreme Court in Schneckloth, is deemed essentially the same as the test in confession cases. Burch v. State, 343 So.2d 831 (Fla.1977); Loredo v. State, 836 So.2d 1103 (Fla. 2d DCA 2003); State v. Manning, 506 So.2d 1094 (Fla. 3d DCA 1987).