906 So.2d 1142 (2005)
Earl WYCHE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-5211.
District Court of Appeal of Florida, First District.
June 20, 2005.
Rehearing Denied July 21, 2005.
*1143 Nancy A. Daniels, Public Defender, and G. Kay Witt, Assistant Public Defender, Tallahassee, for Appellant.
Charles J. Crist, Jr., Attorney General, and Charlie McCoy, Senior Assistant Attorney General, Tallahassee, for Appellee.
BARFIELD, J.
Earl Wyche appeals his convictions for burglary, grand theft, and criminal mischief, following trial by jury, contending the trial court erred by (I) denying his motion to suppress evidence of saliva swabs and DNA test results, because the swabs were obtained by police deception, thus rendering his consent involuntary, and (II) denying his motion for judgment of acquittal on the charge of grand theft, because the state did not present sufficient evidence to prove that the value of items stolen was greater than $300. We affirm and address only the merits of the first issue.
While Wyche was detained in Columbia County for a probation violation, Lake City Police Department Investigator Clint VanBennekom asked Wyche for a saliva sample, stating that he was suspected of committing a burglary at a Winn-Dixie supermarket. In fact, VanBennekom had manufactured the fictitious Winn-Dixie burglary in order to obtain Wyche's consent to take swabs for a sexual-assault investigation. No DNA match was obtained in the sexual-assault case; as a consequence, Wyche was exonerated as to it.
During VanBennekom's investigation, Lake City Police Department Investigator Joseph Moody was also investigating a robbery of The Pink Magnolia, a gift shop in Lake City, and asked VanBennekom to send the saliva swab that he had obtained to the FDLE lab for a comparison with blood drops taken from the crime scene. FDLE acquired a match. Based on the results, Wyche was accused of the robbery, and his subsequent motion to suppress the evidence, on the ground that it had been obtained by deception, was denied.
*1144 Deception does not negate consent. Absent coercion, threats or misrepresentation of authority, the courts have long recognized deception as a viable and proper tool of police investigation. Hoffa v. U.S., 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (government informant in defendant's hotel room); Lewis v. U.S., 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966) (government agent misrepresented identity to get invited into defendant's home for narcotics transaction); On Lee v. U.S., 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952) (deception by eavesdropping undercover agent, wearing a wire, trusted by defendant); Alexander v. U.S., 390 F.2d 101 (5th Cir.1968) (postal inspectors lie to defendant to get him to consent to their looking into his wallet); People v. Zamora, 940 P.2d 939 (Colo.App.1996) (police obtained consent by misrepresenting reasons for entering defendant's apartment).
This court will not follow State v. McCord, 833 So.2d 828 (Fla. 4th DCA 2002). In McCord the court equated deception with coercion. There is no threat of force or other compulsion involved in deception. To the contrary, the use of subterfuge avoids coercion which by its nature is overt and direct. The notion that deception is somehow morally reprehensible when practiced by the police in fighting crime unfairly impugns the motives of those seeking to uphold the law. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) does not hold otherwise. In addressing the obtaining of consent the court specifically couches its test in terms of coercion and force, not deception. Because a suspect is outsmarted by police does not mean the suspect somehow loses the will to refuse consent.
The reliance on McCord by the appellant is unwarranted. The authority cited in McCord to support the statement that a "detective's misrepresentations as to the nature of the investigation may provide evidence of coercion," is United States v. Briley, 726 F.2d 1301 (8th Cir.1984). In Briley, Briley became a suspect in a bank robbery based on an anonymous telephone call. An investigator went to the address given by the caller. A woman named Rosalie Rivera came to the door and let the investigator in. Briley (who was in the apartment) identified himself, talked to the investigator for some time, and denied any involvement in the crime. No arrest was made at that time. After witnesses to the robbery indicated that Briley could be the robber based on a photospread, a "probable cause pickup" for Briley was listed in the Daily Operations Report supplied to officers as they come on duty. Two police officers returned to the apartment building, checked the mailboxes, and found the name "Rivera" was listed for Apartment 13. The caretaker led the officers to his apartment. A woman in the apartment named Rosalie Rivera replied that she did not know where Briley was at that time, mentioned she was Briley's girlfriend, and asked why they wanted to see him. The officers replied only that it was an important matter. As the officers turned to leave the apartment and the building, Rivera said, "All right, he's in my apartment. Come with me." She took them to Apartment 13, opened the door and gestured with her hand at Briley, who was standing in the apartment. The officers arrested Briley. Briley argued the warrantless arrest in his home violated his fourth amendment rights, and that his confession and any identifications resulting from the subsequent lineup had to be suppressed. The trial judge held that Rivera's consent negated any illegality that may have attended Briley's warrantless arrest. On appeal, Briley argued that Rivera's consent was invalid because the officers only told her they wanted to talk to Briley and did not say they would *1145 arrest him. The panel in dictum quoted United States v. Turpin, 707 F.2d 332, 334 (8th Cir.1983), in which that panel stated "[m]isrepresentations about the nature of an investigation may be evidence of coercion." (Emphasis added). Briley's argument was rejected, however, because the panel on appeal determined there was no deceitful misrepresentation and Rivera's consent was voluntary. The officers were in uniform and the cryptic statement that they had important matters to discuss with Briley did not appear to have been said with the intention of tricking Rivera into consenting to an entry. At the time of the statement, the officers were simply trying to locate Briley; they were not yet seeking permission to enter Briley's apartment. The officers did not misrepresent the fact that they had no search or arrest warrant. The panel on appeal then stated: "The foregoing is not meant to imply that Rivera's consent would be considered voluntary had the police intentionally attempted to trick her by falsely stating their purpose. A different case might be presented had the police specifically told Rivera they were not seeking to arrest Briley or that he was not a suspect. We hold only that, in these particular circumstances, Rivera's consent was not coerced." 726 F.2d at 1305 (emphasis added).
In Turpin, Turpin argued the trial judge erred in failing to suppress physical evidence found in his house because officers obtained his consent to enter and search the house by deceit; the alleged deception was that the officers did not tell him that the victim had been killed and that he was a homicide suspect. The panel on appeal rejected his argument because the officers accurately told Turpin that the victim had been in a train accident and that they were investigating the accident, and appellant did not ask any questions at that time and agreed to let the officers inside. The trial judge specifically noted that the sheriff told Turpin's attorney that Turpin was not a suspect, even though officers in fact considered him to be a suspect in the killing, but concluded that other evidence strongly supported the finding that Turpin's consent to the search was voluntary. The panel on appeal determined it could not say the trial judge's finding was clearly erroneous, stating: "We agree that the sheriff's denial of appellant's status as a suspect was somewhat misleading. However, as noted by the district court, the sheriff did supply the attorney with other information which clearly implied that appellant might become a suspect in the future. The officers misrepresented neither the fact that they were investigating a homicide nor that they wanted to search the house as part of their investigation. In particular, the officers did not misrepresent the fact that they had no search or arrest warrant."
In making the statement that misrepresentation may be evidence of coercion, the panel in Turpin cited another decision from the Eighth Circuit, United States v. Meier, 607 F.2d 215 (8th Cir.1979), cert. denied, 445 U.S. 966, 100 S.Ct. 1658, 64 L.Ed.2d 243 (1980), and Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). As one would expect, there was no misrepresentation in Meier. Meier was convicted of failing to file income tax returns. An agent for the internal revenue service sent a letter to Meier requesting an interview and copies of the missing tax returns. The first meeting took place in Meier's office. At this meeting Meier was told the Kansas City Service Center had no record of any tax returns filed by him before 1975. Meier submitted copies of his tax returns for the years in question, asserted the returns had been filed in Kansas City, and agreed to obtain microfilm copies of his cancelled checks for the payments. At a second meeting, Meier gave the agent his bank statements and said he had been unable to *1146 obtain copies of his cancelled checks. The agent then referred the matter to the Criminal Enforcement division. At a third meeting, a second agent informed Meier of his rights to remain silent and to consult an attorney, and told him that whatever he said could be used against him in a criminal prosecution. The agent also informed Meier that the purpose of the investigation was to investigate possible criminal tax violations. Meier responded he understood his rights and wanted to cooperate. At the end of this interview, Meier signed a sworn affidavit. Meier argued that the evidence and statements obtained in the interviews with him should have been suppressed because he was not advised of any of his rights at the first two meetings. He argued he was entitled to Miranda warnings at the outset of the investigation because the investigation was criminal in nature, had focused upon him, and was inherently coercive. At the suppression hearing, the initial agent testified that just after the commencement of the first interview Meier suggested the IRS investigation had been prompted by a postal investigation, and the agent did not respond to this statement. The panel stated that "[w]hile a misrepresentation as to the nature of the investigation can be strong evidence of coercion, Agent Somogyi's silence can only be considered fraudulent if there is clear and convincing evidence that it was intentionally misleading. The burden of proof is upon the movant. We find that Meier has failed to present any clear and convincing evidence that Somogyi's silence was intended to mislead him."[1] (Citations omitted.)
In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), Bumper argued that a rifle introduced in evidence against him was obtained in violation of the Fourth and Fourteenth Amendments. Bumper lived with his grandmother, a black woman, in a rural area. Four white law enforcement officers  the county sheriff, two of his deputies, and a state investigator  went to the house and found the grandmother present with some young children. One of the officers announced he had a warrant to search the house, and the grandmother responded "Go ahead," and opened the door. The grandmother testified that the officers never read to her a warrant, she just took their word that they had one. She also testified she was not told her grandson had been charged with a crime. The Supreme Court held there could be no consent under such circumstances, stating:
When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. . . .
When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion  albeit colorably lawful coercion.
391 U.S. at 548-550, 88 S.Ct. 1788.
The dictum in McCord, relied on by the appellant in the present case, is a classic case of compounding and misapplying dicta, resulting in an incorrect statement of the law. This Court is better served by following the lead of the Third District Court of Appeal in Miami-Dade Police Department v. Martinez, 838 So.2d 672 (Fla. 3d DCA), review denied, 851 So.2d *1147 729 (Fla.2003), and recognizing that deception, standing alone, does not invalidate consent. In Martinez, the trial judge held that the alleged misrepresentation by police officers that the object of their proposed search was only for weapons, rather than for money and drugs (including counterfeit currency), invalidated the consent to search given by the owner and occupant of the premises. On appeal, the panel reversed and stated:
It is clearly established that the mere fact that, as the trial judge found, Mrs. Cepeda's consent may have been induced by a deception as to what the officers were really looking for does not poison a consensual search which, as was plainly the case here, was otherwise voluntary under the totality of the circumstances. To the contrary, "deception, standing alone does not invalidate consent." For example, in [People v. Zamora, 940 P.2d 939 (Colo.Ct.Appl.1996)], the court upheld a consent search induced by misrepresentation of the officers, who were actually searching for evidence of an assault in the defendant's apartment, that they merely wanted to look at the apartment's layout to aid in an investigation of a domestic dispute in an adjacent one. Similarly, in United States v. Andrews, 746 F.2d 247 (5th Cir.1984), cert. denied, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985), overruled on other grounds, United States v. Hurtado, 905 F.2d 74 (5th Cir.1990), a misrepresentation that the federal agents wanted to see the defendant's sawed off shotgun to try to connect it with a robbery, when their actual purpose was to establish the illegal possession of the firearm itself did not taint the defendant's consent. Accord Schneckloth, 412 U.S. at 218, 93 S.Ct. 2041; United States v. Carter, 884 F.2d 368, 375 (8th Cir.1989)(stating rule that deception "standing alone" does not invalidate consent). See generally People v. Santistevan, 715 P.2d 792 (Colo.1986), cert. denied, 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986)(misrepresentation by police about the purpose of a search may weigh against a finding of consent but does not invalidate consent); State v. Johnson, 253 Kan. 356, 856 P.2d 134 (1993)(police could obtain consent to search by claiming they were looking for a third party); State v. Watson, 416 So.2d 919 (La.1982)(police may search suitcase for drugs by obtaining owner's consent to search suitcase for identification); Commonwealth v. Morrison, 275 Pa.Super. 454, 418 A.2d 1378 (1980)(police may misrepresent both identity and purpose to obtain consent to enter home), cert. denied, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).
838 So.2d at 674-675 (footnotes omitted; emphasis in original).
In the case before this Court, appellant was clearly aware of the fact that the officer wanted the DNA sample in order to investigate a crime, and the officer did not misrepresent the fact that he had no search warrant. The officer did not indicate that appellant had no choice regarding whether to provide a DNA sample. Appellant did not acquiesce to a claim of lawful authority.[2]
*1148 We AFFIRM and certify conflict with McCord.
KAHN, J., concurs.
ERVIN, J., dissents with a written opinion.
ERVIN, J., dissenting.
I question whether it can be accurately said that all that was involved in acquiring the saliva sample from appellant was the deception of Investigator VanBennekom. Instead, it appears to me that in addition to the officer's intentional deception representing that appellant was a suspect in a fabricated burglary, and that the sample would be used to determine his culpability in such crime, the officer promised, expressly or impliedly, that if no DNA match were obtained, the defendant would be cleared of any involvement in the offense which the officer knew was concocted, and the defendant knew he had not committed, all of which led to the inducement of the consent.
It seems to me that the Fourth District in State v. McCord, 833 So.2d 828 (Fla. 4th DCA 2002), did not limit its inquiry to the voluntariness of the defendant's consent solely upon the investigating officer's deception, but took into account as well all relevant factors, including "the level of trickery employed." Id. at 830. A strong determinative factor the court emphasized in reaching its decision was that, unlike other cases in which the defendants' consent was held voluntarily obtained, i.e., Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Washington v. State, 653 So.2d 362 (Fla.1994), McCord was not a suspect in the crime for which he was questioned, and, in fact, the crime itself was fabricated for the unquestioned purpose of obtaining his consent.
The leading case addressing the question of what constitutes the voluntariness of consent to search is Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), which, in adopting the totality-of-the-circumstances test, observed that the issue should be analyzed by the same approach used for deciding the voluntariness of a defendant's confession under the Fifth Amendment's self-incrimination clause. Id. at 223-25, 93 S.Ct. 2041. From my own examination of applicable Florida case law, the resolution of the issue of whether a defendant's consent can be said to be voluntarily obtained under circumstances similar to those at bar appears far from clear.
The rule has long been established that deception and trickery alone will not invalidate a confession, Denmark v. State, 95 Fla. 757, 116 So. 757 (1928), although they are factors to be considered, Gaspard v. State, 387 So.2d 1016 (Fla. 1st DCA 1980). An important distinction, however, is made between police misstatements which delude a defendant as to the import of his or her confession, and are thus improper, and police misstatements of relevant facts, which can be proper. State v. Manning, 506 So.2d 1094, 1097-98 (Fla. 3d DCA 1987). The factor requiring suppression, under Manning, is coercion, "and a misstatement of fact is not coercion." Id. at 1098. Although the courts continue to recognize that a confession, otherwise voluntarily acquired, resulting from a misstatement of a material fact is admissible, despite the use by police of fabricated incriminating evidence, such as a pretend *1149 polygraph test and the false statement that the defendant failed the test, Burch v. State, 343 So.2d 831, 833 (Fla.1977), nevertheless, the above rule is tempered by the warning that "[t]echniques calculated to exert improper influence, to trick, or to delude the suspect as to his true position result in the exclusion of self-incriminating statements thereby obtained." Thomas v. State, 456 So.2d 454, 458 (Fla.1984) (emphasis added).
In none of the cases I have found permitting the admission of a defendant's confession, notwithstanding an officer's use of a factual misrepresentation, has the misstatement involved a complete fabrication of the crime defendant was advised he was suspected of committing. Instead, while the suspect was being questioned about an actual offense of which he was the target of an investigation, a factual misrepresentation occurred during the course of that investigation, such as in Johnson v. State, 660 So.2d 637 (Fla.1995), where the court held a confession admissible, despite the misrepresentation that the defendant had failed a polygraph examination which he had consented to take. Although the court ruled that such deception by itself did not render the statement inadmissible, it continued that egregious police misconduct, such as "physical or psychological coercion, intentional deception, or a violation of a constitutional right" could cause the statement to be suppressed. Id. at 642.
In my judgment, the present case is a classic example of police overreaching that requires suppression of the DNA sample. The officer's deliberate misrepresentation was not a factual misstatement in an ongoing case in which appellant was a suspect, but its purpose was to delude him of his true position by informing him he was a suspect in a crime that had never been committed so that incriminating evidence might be obtained from him in an altogether unrelated case, which, as events developed, also revealed his non-complicity. It was not until the investigation of yet another unrelated case that the officer's deception bore fruit and a match was finally obtained. Such crime shopping, in my opinion, cannot be condoned in an ordered society. I would therefore reverse the conviction and remand the case with directions to suppress the evidence obtained from appellant by the intentional fabrication of the police.
NOTES
[1] There was also no misrepresentation in United States v. Mapp, 561 F.2d 685 (7th Cir.1977), upon which the panel in United States v. Meier, 607 F.2d 215 (8th Cir.1979), cert. denied, 445 U.S. 966, 100 S.Ct. 1658, 64 L.Ed.2d 243 (1980), relied.
[2] Although not argued on appeal by the State, it is possible that there is no Fourth Amendment issue present in this case. Appellant was in custody for a violation of probation at the time of the DNA request. DNA could have been taken for identification. DNA is no different from many other personal characteristics of an individual. We leave our DNA all around the public environment  in hotels and motels, in restaurants and bars, on the sidewalks and in the trash. There should be no different treatment of DNA from fingerprint samples and handwriting exemplars, U.S. v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); Doe v. State, 634 So.2d 613 (Fla.1994), voice exemplars, U.S. v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and fingernail scrapings, Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). Swabbing the inside of the mouth is much less time-consuming and intrusive than obtaining these other personal characteristics. The issue of deception is irrelevant when consent is not required.