989 So.2d 757 (2008)
STATE of Florida, Appellant,
v.
Robert BARTLING, Appellee.
No. 4D07-2688.
District Court of Appeal of Florida, Fourth District.
September 17, 2008.
*758 Bill McCollum, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and Tom Wm. Odom, Assistant Public Defender, West Palm Beach, for appellee.
HAZOURI, J.
Robert Bartling was charged by information with possession of cocaine and misdemeanor possession of drug paraphernalia. He filed a motion to suppress the crack cocaine and a crack pipe which had been found in a cigarette pack during a search of his studio apartment. After hearing testimony at the motion to suppress, the trial court granted Bartling's motion from which the state now appeals. We affirm.
The state presented the testimony of Broward Sheriff's Officer Deputy Anthony Castando, who had been with the Broward Sheriffs Office ("BSO") for almost ten years. Castando was assigned to the selective enforcement team, which mostly handles narcotics and prostitution.
BSO received a "crimestopper" tip that drugs were being sold out of Bartling's apartment. Without obtaining a warrant or conducting any surveillance of Bartling's apartment, Castando and Detective Henry Lopez went to Bartling's apartment at approximately 1 a.m.
When Castando got to the residence, Bartling answered the door and Castando said, "we explained to him why we were there, in reference to drugs being sold, I think, I think they said drugs were being sold in the apartment. And we wanted to make sure that he didn't have major quantities of a certain drug, I don't remember which one I used."
Castando further testified, "[a]nd like I said, I don't know what drug I talked about, what narcotics, what drugs were being sold, I didn't want to make it seems [sic] worse than it is." Castando believes he talked about heroin or pills, and Bartling said he did not have any of those drugs. Castando then asked Bartling if he and Lopez could look around to make sure he didn't have any major amounts of these narcotics. Bartling consented and signed a consent to search form.
When cross-examined, Castando admitted that he uses different fabricated scenarios in order to put a suspect at ease in order to induce a suspect to consent to a search. He denied using the scenario of looking for a dead body in order to obtain permission to search Bartling's apartment. He was, however, impeached with the use of his pre-trial deposition in which he indicated that he may have used a scenario with a dead body in order to obtain Bartling's consent, and acknowledged having used that scenario in other cases.
After the state rested, Bartling testified that he had been sleeping and heard a knock on the door. He was advised that they were police officers. He opened the door and, contradicting Castando's testimony, stated that Castando told him that he had received an anonymous tip that someone was dragging a dead body in a rug outside of the apartment. When *759 asked if he would mind if they looked for a dead body, he permitted them to enter the studio apartment.
Bartling denied having a dead body in his apartment. When Castando said he wanted to search for a dead body in a rug, Bartling responded, "if that's what you need to do, I have no dead body in this house." He told the officers they could come in and look for the dead body. The apartment is very small and he knew there was no way he could hide a dead body in his apartment.[1]
Castando and Lopez began to roam throughout the apartment. They went into the kitchen and began opening cabinets and the closet, at which time Bartling asked why they were looking in cabinets and drawers in the kitchen if they were searching for a dead body. He was informed by Lopez that "sometimes people chop them up and hide them." The officers continued their search and opened a cigarette pack, which was in the kitchen cupboard, and found evidence of cocaine and drug paraphernalia.
In her final order, the trial court concluded that Bartling's version of the events of that evening was more credible and resolved the conflicts in his favor.
In granting the motion to suppress, the trial court stated:
The Court is well aware that deception does not generally negate consent. Absent coercion, threat or misrepresentation of authority, the courts have long recognized deception as a viable and proper tool of police investigation. See, Hoffa v. United States, 385 U.S. 293 [87 S.Ct. 408, 17 L.Ed.2d 374] (1966); People v. Zamora, 940 P.2d 939 (Colo.App. 1996) (police obtained consent by misrepresenting reasons for entering defendant's apartment). The Court does not find the holdings of Wyche v. State, 906 So.2d 1142 (Fla. 1st DCA 2005) and Miami-Dade Police Department v. Martinez, 838 So.2d 672 (Fla. 3rd DCA 2003) to be controlling in this case. While these cases stand for the proposition that deception standing alone does not invalidate consent. Additionally, the fact that Costanzo [sic] searched the kitchen cabinets does not vitiate the consent. As Lopez told Defendant, bodies can be chopped up and placed into cabinets or freezers. However, looking into a cigarette package stretches even the most reasonable of imaginations.
Instead, this Court finds guidance from the holding of State v. McCord, 833 So.2d 828 (Fla. 4th DCA 2002). The Fourth District Court of Appeal had held that the level of trickery may result in the exclusion of evidence. In the case sub judice, the level of trickery went far beyond what law enforcement officers should utilize when trying to gain entry into a citizen's home in the wee hours of the morning. The level of trickery vitiated any consent that Defendant might have given. Given the totality of the circumstances of this case, the evidence must be suppressed. Accordingly, it is
ORDERED AND ADJUDGED that Defendant's Motion to Suppress Evidence is GRANTED.
In reviewing a trial court's ruling on a motion to suppress, we are governed by the standard that "mixed questions of law and fact that ultimately determine constitutional rights should be reviewed ... using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue." Connor v. State, 803 So.2d 598, 605 (Fla.2001) (citing United States v. Bajakajian, 524 U.S. 321, 337 n. *760 10, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)). As to issues involving conflicts in testimony as to the facts surrounding a search, we defer to the trial court as to credibility and reasonable inferences and deductions derived from those facts. Lee v. State, 868 So.2d 577, 579 (Fla. 4th DCA 2004).
Although the search in the instant case was warrantless, a search conducted without a warrant is constitutionally permissible if valid consent is given. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The state has the burden of proving whether the consent was given freely and voluntarily. Id. "[W]hether a consent to a search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Id. at 227, 93 S.Ct. 2041.
"[A] private home, as here, is an area where a person enjoys the highest reasonable expectation of privacy under the Fourth Amendment, see, e.g., Payton v. New York, 445 U.S. 573, 585, 589-90, 100 S.Ct. 1371, 1379, 1381-82, 63 L.Ed.2d 639, 650, 653 (1980), and accordingly, the factors bearing on the voluntariness of a consent to search a home must be scrutinized with special care." Gonzalez v. State, 578 So.2d 729, 734 (Fla. 3d DCA 1991).
In State v. McCord, 833 So.2d 828 (Fla. 4th DCA 2002), the case relied upon by the trial court, the detective suspected the defendant of 22 separate armed robberies in which bricks were used to smash the doors of convenience stores. He suspected McCord because he was stopped with a brick in a bag while casing a gas station. The defendant was later arrested on unrelated charges and, while in county jail, the detective met with him, advised him of his rights, and told him he was a suspect in a rape case. The detective said the rape occurred near the location of the defendant's car on a certain date. The detective convinced the defendant to give a DNA sample in order to clear himself. There had been blood found at the scene of one of the robberies and the detective wanted to compare the samples. The detective never mentioned the robberies to McCord. The samples matched.
The defendant moved to suppress the DNA evidence on the ground that "his consent was involuntary and obtained in violation of his due process rights as a result of the detective's deceitful tactics." Id. at 829. At the hearing, the detective admitted that the rape had never occurred and he completely fabricated the story to get the defendant's consent. The detective also testified that he believed McCord consented only because he wanted to clear his name in the fictional rape case. Id. The trial court found that because the DNA sample "was taken upon the `premise of a fictitious rape to which the detective knew was non-existent,' the court determined that McCord involuntarily consented and suppressed the evidence." Id.
On appeal, this court affirmed the suppression of the evidence, holding that the level of trickery employed by the detective essentially undermined the voluntariness of the defendant's consent. This was because the deception "was so manipulative that his `consent' did not `validate the search.'" Id. at 830.
The state argues that the trial court erred in granting Bartling's motion to suppress because the consent Bartling gave was voluntary and was not vitiated by the level of trickery used. The state asserts this court's McCord decision is wrongly decided, and that the First District's decision in Wyche v. State, 906 So.2d 1142 (Fla. 1st DCA 2005), aff'd, 987 So.2d 23 (Fla.2008), is controlling.
*761 In Wyche, the First District acknowledged conflict with this court's decision in McCord and certified it to our supreme court. In its brief, the state urged this court to recede from McCord, or as an alternative, to delay ruling until the conflict between McCord and Wyche was resolved by the supreme court. Thereafter, we entered an order acknowledging the conflict between McCord and Wyche, advising the parties that we would defer ruling until the supreme court resolved the conflict.
The Supreme Court of Florida has now ruled on Wyche and the conflict with McCord, affirming Wyche, but distinguishing it from State v. McCord. The supreme court found each case, one affirming the denial of a motion to suppress where trickery was used, and the other affirming the granting of a motion to suppress because of the fabrication, was correctly decided based upon the totality of the circumstances in each particular case.
In Wyche, the supreme court noted that at the motion to suppress, the case was based upon stipulated facts. The stipulated facts were:
1. Wyche was in custody (on an unrelated charge).
2. Police were investigating a rape, and Wyche was a suspect.
3. To obtain DNA for the rape investigation, Wyche was told that the police were investigating a burglary of a Winn-Dixie grocery store and was asked to give saliva swabs that could be tested for DNA and used in the Winn-Dixie investigation.
4. The Winn-Dixie burglary was made up by the investigator.
5. The saliva swab cleared Wyche in the rape investigation.
6. The saliva swab was given to another investigator who was investigating a burglary at The Pink Magnolia, a gift shop where Wyche had worked.
7. The saliva swab did have a positive match with the DNA from The Pink Magnolia burglary.
8. The DNA match was then sought to be used in the prosecution of The Pink Magnolia burglary.
Wyche v. State, 987 So.2d 23, 27 (Fla.2008).
The focal issue in Wyche was whether defendant Wyche's consent to the saliva swabs, upon being told that the DNA sample was for use in a fictitious burglary investigation, requires that saliva swabs containing Wyche's DNA not be used in the prosecution of an actual burglary.
Wyche consented to the collection of bodily fluids after being told that the samples were to be used in a criminal investigation. The court reasoned that Wyche's consent to the search was requested for the purpose of investigating one alleged crime, with the results of the search being used in the investigation and prosecution of another crime.
Specifically, Wyche was advised that the requested saliva swab was to be used in investigating a burglary (fictitiously created by the police), and the saliva was in fact used to investigate and prosecute an actual burglary. Wyche was not misled into thinking that the DNA evidence would not be relevant to a burglary investigation. In fact, it cleared Wyche in the rape investigation.
The Court noted that:
For Wyche to prevail on his motion to suppress, we would have to hold that the sole fact that Wyche was told that the saliva swabs were to be used in the investigation of a fictitious burglary made his consent to the saliva swabs coerced, although the circumstances of Wyche's consent were otherwise similar to Washington's consent. We do not *762 believe that suppressing the saliva swabs and the DNA test results on the basis of this one fact conforms to the totality of the circumstances analysis mandated by Schneckloth and Washington.[2]
Id.
In discussing the apparent conflict between Wyche and McCord, the Court stated:
While we approve the First District's decision in Wyche, we distinguish rather than disapprove the Fourth District's decision in McCord. We find that there are circumstances in McCord upon which that court could have determined under the totality of the circumstances that McCord's consent was coerced.
McCord was suspected in a substantial number of robberies. While McCord was in custody on unrelated charges, an investigator told him that he was a suspect in a rape, which was fictitious, and that a saliva sample could exclude him from the rape investigation. At no time did the investigator tell McCord that he was a suspect in the robberies. McCord was thereafter charged in the robberies, and the saliva sample was used in the prosecution. The investigator testified that he believed McCord consented to the saliva sample only because he wanted to clear his name in the fictitious rape case. This candid testimony supports a finding that the investigator's deception caused McCord to feel coerced into consenting.
While we do not believe that a defendant's consent to a search should be interpreted as being conditioned on the resulting evidence being used only in investigations of crimes that the defendant knows that he or she did not commit, we recognize that a defendant's understandable desire to clear his or her name of the stigma of a rape accusation is a circumstance to consider. McCord's being told that he was a suspect in a serious sex crime for which DNA could clear him is a circumstance relevant to the analysis of whether McCord's consent was voluntary or coerced that distinguishes McCord from the instant case. The trial court in Wyche could have reasonably concluded that being accused of burglary does not entail the same pressure as being accused of rape. Again, the analysis is based upon the totality of the circumstances.
Id.
Based upon the reasoning of the supreme court in Wyche, we conclude that the trial court in the instant case was correct in granting the motion to suppress based upon the totality of the circumstances. As in McCord, the trial court in the instant case concluded that "the level of trickery went far beyond what law enforcement officers should utilize when trying to gain entry into a citizen's home in the wee hours of the morning." As the supreme court noted in Wyche, we recognize that Bartling's understandable desire to clear his name of the stigma of a murder accusation is a circumstance to consider. Additionally, the search clearly exceeded the scope of consent when the police searched for a dead body in a cigarette pack. As such, we conclude that, based upon the totality of the circumstances, the trial court was *763 correct in granting the motion to suppress.
Affirmed.
KLEIN and DAMOORGIAN, JJ., concur.
NOTES
[1] The apartment consisted of a single bedroom with a bathroom and a kitchen.
[2] See Washington v. State, 653 So.2d 362 (Fla. 1994). In Washington, the Court held that under the totality of the circumstances, hair and blood samples validly obtained from a suspect in a sexual battery investigation could later be used in the prosecution of an unrelated murder case. The fact that Washington had not been informed that he was a suspect in the murder case did not render his consent involuntary. See id. at 364-65.